**BILL BROWN CONSTRUCTION CO., INC., d/b/a Bill Brown Trucking, Plaintiff/Appellant,**

v.

**The GLENS FALLS INSURANCE COMPANY, Defendant/Appellee.**

Supreme Court of Tennessee, at Knoxville.

Oct. 7, 1991.

N. Mark Kinsman, Chattanooga, for plaintiff/appellant.

Steven W. Keyt, Chattanooga, for defendant/appellee.

## OPINION

ANDERSON, Justice.

The plaintiff appeals from a Court of Appeals judgment holding that a cargo insurance policy did not provide coverage for plaintiff's cargo loss, because the policy was unambiguous and because the principles of waiver and estoppel cannot be used to broaden the coverage so as to protect the insured against perils not insured against in the policy. We disagree with the Court of Appeals and therefore reverse.

## FACTS

The plaintiff, Bill Brown Construction Company, Inc., d/b/a Bill Brown Trucking, specializes in the transportation of large cargos which, due to their length, width, heighth, size or weight, cannot be transported on conventional trailers. Before transporting such cargos, it is necessary to secure a permit from each state through which the cargo will be transported. In issuing such permits, the state designates the route to be traversed with each shipment, to be sure the shipments are transported with safety.

In 1986, Bill Brown, the co-owner of the plaintiff company, met with James Wofford, an agent for the defendant, Glens Falls Insurance Company, and asked him for a "full coverage policy" on the cargo transported in his business. Brown showed Wofford several photographs de-

picting plaintiff's tractor-trailer units loaded with the type of oversized cargo they typically haul. The pictures showed cargos which substantially exceeded the height of the tractor-trailer units on which they were loaded. Brown testified Wofford told him: "That's no problem, you've got full coverage." Brown's wife, Catherine, also testified full coverage was promised and that after the claim was denied, the plaintiff obtained full cargo coverage elsewhere at the same premium. Although this testimony is disputed in part, the jury credited Brown's version. As a result of this conversation, Wofford caused the defendant to issue to plaintiff a cargo insurance policy, which provided as follows:

**A. COVERAGE**

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. **Covered Property,** as used in this Coverage Form, means property of others in transit under a tariff, bill of lading or shipping receipt....

. . . .

3. **Covered Causes of Loss**

Covered Causes of Loss means "loss" caused by or resulting from the following causes for which you are legally liable as a motor carrier, or as an independent contractor under lease to a motor carrier while the goods are in your custody or control:

   **a.** Fire, lightning or explosion;

   **b.** Windstorm;

   **c.** *Collision of the conveyance with any other vehicle or object;*

   **d.** Overturn of the conveyance;

   **e.** Collapse of bridge, wharf, dock, platform or culvert;

   **f.** Stranding, sinking, burning, or collision of any regular ferry, including General Average and Salvage Charges;

   **g.** Flood, meaning the rising of any natural body of water;

   **h.** Theft, but excluding pilferage.

(Emphasis added.) This policy was renewed in June 1987 and was in force at all times relevant to this appeal.

In March 1988, the plaintiff was hauling a large "asphalt dryer" on a tractor-trailer from Chattanooga to Clarksville, Indiana, pursuant to a permit issued by the State of Tennessee. While transporting the oversized cargo over the designated route on Interstate 40 in the vicinity of Nashville, the top of the asphalt dryer struck the bottom of an overhead bridge. The asphalt dryer was knocked off the trailer on which it was being transported and was extensively damaged, but the tractor-trailer did not collide with the bridge and was not damaged.

The defendant denied coverage, asserting that its policy afforded coverage only if the cargo was damaged as a result of a collision involving the vehicle itself, as opposed to a collision involving only the cargo. The plaintiff filed this action, claiming that the defendant was precluded from denying coverage by waiver or estoppel or by ambiguity of the policy.

At trial, the court found, as a matter of law, that the policy as written was not ambiguous and did not provide coverage for the loss, but submitted the waiver and estoppel issue to the jury. The jury found for the plaintiff on the grounds that the defendant was estopped by the representations of its agent to deny coverage.

The Court of Appeals affirmed the trial court's judgment that the insurance policy language was unambiguous, but reversed on the waiver and estoppel issue, holding that those principles were not available to broaden the coverage of an insurance policy to insure against additional perils not insured in the written policy.

## AMBIGUITY

The parties dispute the meaning of the term "conveyance" as used in the clause of the policy ensuring coverage for "collision of the conveyance with any other vehicle or object." The plaintiff argues that, when strapped onto its trailer, the cargo becomes part of the "conveyance," and that since "conveyance" is not defined in the policy, the term is ambiguous and should be construed to cover a collision between the cargo and the bridge, even where there is no

contact between the tractor-trailer unit and the bridge.

The question presented is one upon which other jurisdictions have reached different conclusions under similar factual situations. A number of courts, asked to construe the term "collision of a vehicle," have held that this language must be given its ordinary meaning and have denied coverage unless the vehicle itself was involved in the collision. Cases denying recovery for damage to the cargo alone, based on limiting language in the policy, include: *Trinity Universal Insurance Co. v. Robert P. Stapp, Inc.,* 278 Ala. 209, 177 So.2d 102 (1965), ("collision of the vehicle"); *Wolverine Ins. Co. v. Jack Jordan, Inc.,* 213 Ga. 299, 99 S.E.2d 95 (1957), ("collision of the vehicle"); *Mendelsohn v. Automobile Ins. Co.,* 290 Mass. 228, 195 N.E. 104 (1935), ("accidental collision of the motor truck with any other automobile, vehicle or object"); *Barish–Sanders Motor Co. v. Fireman's Fund Ins. Co.,* 134 Neb. 188, 278 N.W. 374 (1938), ("collision of the vehicle"); *Birmingham Fire Ins. Co. of Pa. v. Newsom Truck Lines, Inc.,* 390 S.W.2d 537 (Tex.Civ.App.1965), ("collision of the vehicle"); *Hamilton Trucking Service v. Automobile Ins. Co.,* 39 Wash.2d 688, 237 P.2d 781 (1951), ("accidental collision of the motor truck or trailer with any other automobile, vehicle or object"). Most of the policies construed in these cases used the terms "vehicle" or "motor truck". In one case, the policy did refer to a "conveyance," but it did so in such a way as to make the meaning of the term abundantly clear to the court construing it. *Old Colony Insurance Co. v. Anderson,* 246 F.2d 102 (10th Cir.1957), ("collision of land conveyances while the insured property is being transported thereon.").

In other instances, courts have found the language of the policy, whether referring to "collision of the vehicle" or "collision of the conveyance," to be ambiguous. *See, e.g., Garford Trucking, Inc., v. Alliance Ins. Co. of Philadelphia,* 195 F.2d 381 (2nd Cir.1952), ("vehicle" and "conveyance" used interchangeably); *Edgerton v. Minneapolis Fire & Marine Ins. Co.,* 142 Conn. 669, 116 A.2d 514 (1955), ("collision of the vehicle"); *Brown Mfg. Co. v. Crouse,* 251 Iowa 594, 102 N.W.2d 154 (1960), ("collision of the vehicle"); *C & J Commercial Driveway, Inc., v. Fidelity & Guarantee Fire Corp.,* 258 Mich. 624, 242 N.W. 789 (1932), ("collision of the vehicle"); *Gould Morris Electric Co. v. Atlantic Fire Ins. Co.,* 229 N.C. 518, 50 S.E.2d 295 (1948), ("collision of the conveyance"); *Bucks County Const. Co. v. Alliance Ins. Co.,* 162 Pa.Super.Ct. 153, 56 A.2d 338 (1948), ("collision of the conveyance"); *Continental Ins. Co. v. Griffin,* 218 S.W.2d 350 (Tex.Civ.App. 1949), ("collision of the conveyance"). In holding that recovery should be allowed, these courts tend to look to the intent of the parties, finding that despite what appears to be limiting language, the policies, when considered in their entirety and upon their face, are meant to insure the cargo against the hazards of the road while in transit. *See, e.g., C & J Commercial Driveway, supra,* 242 N.W. at 790. As one court in a recent case has noted:

> Since it is evident that the purpose of the policy was to insure against loss or damage to the cargo, it is not offensive to its underlying intent to hold that the ambiguity must be construed to afford coverage for damage not only where it results from a collision involving the transporting vehicle, but also where that vehicle is itself not so involved. The liability to the insured is the same whether or not the truck collided with an object which in turn caused damage to its cargo.

*Arrow Industrial Carriers, Inc. v. Continental Ins. Co.,* 232 N.J.Super. 324, 556 A.2d 1310, 1315 (1989).

In rejecting "ordinary meaning" analysis, the court in *Arrow Industrial* instead based its holding on a policy analysis. It noted that the *context* of disputed language, as well as the language itself, may create an ambiguity and that in resolving ambiguity, "[t]he court's responsibility is to give effect to the whole policy, not just one part of it." *Id.* To do otherwise, the court said, would be to overlook "the reality of the world in which the insurance policies were to have effect." *Id.* 556 A.2d at 1316.

The only Tennessee case involving a similar question turned on a dissimilar set of facts and offers little guidance here. In *Inman v. Life & Casualty Ins. Co.*, 164 Tenn. 12, 45 S.W.2d 1073 (1932), an action was filed for death benefits under an accident policy providing benefits for injury or death resulting from "collision of or accident to the vehicle" in which the insured was riding. As it turned out, the insured was on the outside of the moving truck, in the process of adjusting the cargo, when his head struck an underpass and he was killed. Neither the truck nor the cargo came in contact with the underpass. The plaintiff contended that the deceased was a part of the vehicle on which he was riding within the meaning of the policy provisions. The Court rejected this contention and held that under the facts of this case there was no "collision of or accident to the vehicle."

■ If the meaning of the contractual language in *Inman* was reasonably clear to the Court, at least insofar as it applied to the facts of that case, the meaning of the term "collision of the conveyance" as used in the contract in this case is much less clear. In our judgment, it would comport with the intent of the parties and would not unduly strain the meaning of the term "conveyance" to hold that it refers to both the vehicle and its cargo while the vehicle is in transit. But rather than rely on the ambiguity of the contract to permit recovery by plaintiff, we conclude that the record establishes an even stronger basis upon which to predicate our decision in this case, and it is to a discussion of that alternate ground that we now proceed.

## WAIVER AND ESTOPPEL IN INSURANCE LAW

The Browns testified, and the jury believed, that the defendant's agent had promised full coverage of plaintiff's cargo. The Court of Appeals reversed the trial court's judgment, however, on the grounds that waiver and estoppel cannot be used to extend the coverage of an insurance policy.

Two "well-settled" but irreconcilable doctrines have collided to create uncertainty in this area of the law. On one hand, it has frequently been held that:

> As in the case of agencies in general an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority. [Consequently], it has been said that there is no rule of law more firmly established than the rule that an insurance company, by reason of its agent's conduct, may be estopped to deny a "waiver" of provisions inserted in the policy for the benefit of the company.

*Couch on Insurance 2d* § 71.9, fn. 8 (citation omitted). The corresponding rule in Tennessee is supported by an agency statute, Tenn.Code Ann. § 56–6–147 (1989), which provides that:

> Every insurance agent or limited insurance representative who solicits or negotiates an application for insurance of any kind shall, in any controversy arising from the application for insurance or any policy issued in connection therewith between the insured ... and the insurer, be regarded as the agent of the insurer and not the insured or his beneficiary.

The purpose of the Tennessee statute

> ... is to prevent the insurance company from denying responsibility for representations and actions from the agent from whom applications are voluntarily accepted and to protect an applicant who relies on such representations or actions. The statute ... is thus liberally construed in the insured's favor.

15 Tenn. Jurisprudence, *Insurance*, § 9 at 180–81 (1984); quoting *Industrial Life & Health Insurance Co. v. Trinkle*, 30 Tenn. App. 243, 204 S.W.2d 827 (1947). Therefore, "[a]n agent acting within the scope of his apparent authority, though exceeding his authority, binds his principal." *Industrial Life & Health Insurance Co. v. Trinkle*, 185 Tenn. 434, 206 S.W.2d 414, 415 (1947).

On the other hand, "[i]t has been repeatedly held that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights

reserved therein." 16B Appleman § 9090 at 579 (1981). This rule is derived from the equitable maxim that estoppel is available to protect a right, but never to create one, *see Henry County v. Standard Oil Co.,* 167 Tenn. 485, 71 S.W.2d 683 (1934), and was invoked in Tennessee by the Court of Appeals in *Hardison v. Continental Casualty Co.,* 410 S.W.2d 729 (Tenn.App.1966), and again in *African Trading International v. Fireman's Fund Insurance Co.,* 583 S.W.2d 607 (Tenn.App.1979). Neither opinion discusses the common-law doctrine of agency, the Tennessee Agency Statute, or the numerous cases construing that statute in favor of insureds who have relied upon representations of insurance agents.

In order to reconcile these conflicting principles, we have reviewed the history of waiver and estoppel in our Tennessee insurance cases, those from other jurisdictions, and the arguments for and against permitting waiver and estoppel to broaden the coverage of an insurance policy.

### TENNESSEE CASES

In 1874, we first considered whether an agent could waive provisions intended for the benefit of the insurer:

> [T]he general tending of the cases is, that the officers and agents of Insurance Companies may waive the usual condition that the premium must be paid before the policy shall be effectual, *as well as any other condition in the contract intended for their benefit,* and if the assured is allowed to act upon the confidence of such waiver, the insurer is estopped to deny the fulfillment of the condition.

*Murphy v. The Southern Life Ins. Co.,* 62 Tenn. 440, 450–51 (1874) (emphasis added).

In 1881, we considered whether an insurer could be estopped, by the acts of its agent, from denying liability for a loss which was clearly not insured by the contract. The insured owned a distillery which was destroyed by fire. The insurance agent was fully aware that the distillery was operated day and night. However, the insurance policy contained a provision requiring waivers and modifications to be in writing and endorsed by the insurer, and also contained the following language:

> [I]f the above-mentioned premises shall be occupied or used so as to increase the risk, or the risk be increased by any means whatever within the control of the assured, without the assent of the company endorsed hereon; or, if a manufacturing establishment, running at night, then in every such case the policy shall be void.

*American Central Ins. Co. v. McCrea, Maury & Co.,* 76 Tenn. 513, 516–17 (1881). We surveyed numerous cases from other jurisdictions and concluded that:

> [T]he weight of authority is now that if notice be duly given to the company, or its agent, of the ... increased risk, and no objection is made, the company will be estopped to insist upon a forfeiture of the policy....

*Id.* at 523–24. We held that:

> [I]t is ... clear that [the insured] acted under the belief, induced by these agents, that the policy in suit was in force for their protection. Under these circumstances, the jury, under a proper charge, would have been warranted in finding that there was a waiver of the condition, or the forfeiture....

*Id.* at 527.

If any doubt remained about the liability of Tennessee insurers for the acts and knowledge of their agents, that doubt was put to rest 26 years later when the Legislature enacted Chapter 42 of the Public Acts of 1907 (now codified in substantially the same language at Tenn.Code Ann. § 56–6–147), which provided:

> [A]ny person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever.

In *Maryland Casualty Company v. McTyier,* 150 Tenn. 691, 266 S.W. 767 (1924), we held that:

The obvious intention of the Legislature is to make an insurance company responsible for the acts of the person who assumes really to represent and act for it in these particulars, *and to change the rule of law that the insured must at his peril know whether the person with whom he is dealing has the power he assumes to exercise, or is acting within the scope of his authority. [The statute] seems to be designed in the clearest manner to make the company responsible to the public for the acts of one whom it permits to solicit insurance on its behalf* ....

. . . .

It is true that by applying the doctrine of waiver effect is given to parol assent despite the provision of the policy requiring written assent, and that the doctrine of estoppel is thus involved.... The bill in this case alleges facts which if true make out a waiver by the defendant of certain defenses, and the doctrine of estoppel thereupon applies.

*Id.* 266 S.W. at 769 (emphasis added).

For many years thereafter, our Tennessee cases consistently held insurers liable for the knowledge and representations of their agents, even where such liability had the effect of broadening the coverage of the written policy. *See, e.g., T.H. Hayes & Sons v. Stuyvesant Ins. Co.,* 194 Tenn. 35, 250 S.W.2d 7 (1952) ("If the risk ... was greater [than covered by the policy], or if the premiums for the insurance ... would have been higher, ... all elements of estoppel are present to prevent the insurance company from relying on those facts to escape liability."); *Industrial Life & Health v. Trinkle,* 185 Tenn. 434, 206 S.W.2d 414 (1947) ("An agent acting within the scope of his apparent authority, though exceeding his authority, binds his principal."); *Dixon v. Pickle,* 46 Tenn.App. 223, 327 S.W.2d 50 (1959) ("Justice and law ... require that the insurer shall be held to sanction what the agent agrees to and upon which the insured relies."); *Commercial Standard Ins. Co. v. Paul,* 245 S.W.2d 775 (Tenn.App.1951) ("Justice and law ... require that the insurer shall be held to sanction what the agent agrees to and

upon which the insured relies."); *Bailey v. Life & Cas. Ins. Co. of Tenn.,* 250 S.W.2d 99 (Tenn.App.1951) ("*Any* contractual provision in a policy of insurance ... may be waived by an officer or agent of [the] insurer...." (emphasis added)); *Accident & Cas. Ins. Co. v. Lasater,* 32 Tenn.App. 161, 222 S.W.2d 202 (1949) (Notice to the agent of conditions prohibited by the policy renders the condition waived).

In *Henry v. Southern Fire & Casualty Co.,* 46 Tenn.App. 335, 330 S.W.2d 18 (1958), the insured alleged that the agent had promised "full coverage." The insured also alleged that the agent had knowledge of the fact that the insured occasionally pulled his log trailers on the highway, in connection with his lumber business. None of the insured's log trailers were listed as covered in any of the insurance policies, and damage caused by trailers not listed was expressly excluded by the policy. Predictably, the insured suffered a loss while operating one of its trailers.

The Court of Appeals recognized the relationship between the statutory agency relationship of the agent and the insurer, and the doctrine of equitable estoppel:

[The agent] was the agent of the defendant ... Insurance Company. T.C.A. § 56–705 [now § 56–6–147. Therefore,] it is not necessary to determine in just what manner [the agent] was in error.... The result was the same to the complainants. They were lulled into a false sense of security. They were misled to their prejudice....

In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, mistake, or negligence of an agent of the company. If either party must suffer from an insurance agent's mistake, it must be the insurance company, his principal.

*Id.* at 30.

However, in *dicta,* the Court of Appeals went on to explain its holding in favor of the insured as follows:

The company accepted liability for the accident in this case by the *general*

*terms and insuring agreements* of the policy; if the jury finds the issues in favor of the complainants, the company will be estopped to rely upon the terms of the *Exclusion* clause as a defense. *Id.* at 32 (emphasis added). None of the authority cited by the Court of Appeals supports any distinction between "general insuring terms" and "exclusionary terms." Moreover, such a distinction would be difficult to make in *Henry,* since the insured's trailer was not described in the policy's insuring clauses and also was specifically excluded.

The next reported case was *Miller v. Monticello Insurance Co.,* 50 Tenn.App. 363, 361 S.W.2d 496 (1961). The insured alleged that the insurance agent had promised full coverage on the insured's equipment. The insuring clauses of the contract provided coverage to the property "while located" at the insured's business premises. The Court of Appeals held that this language was a

> restriction or limitation of coverage ... which the defendant's agent could have waived.
>
> . . . .
>
> [A] jury might well find that the defendant's agent, ... and therefore the company itself, waived the restriction or limitation of coverage and also lulled [the plaintiffs] into a sense of false security by leaving them under the impression that they were fully covered under the terms of the policy which was issued.

*Id.* at 499. *Miller* has been criticized, since it "clearly addresses a matter of coverage as opposed to an exclusion...." *Dallas Glass v. Bituminous Fire & Marine Ins. Co.,* 544 S.W.2d 351, 358 (Tenn.1976) (dissenting opinion).

Once again, in *Vulcan Life & Accident Ins. Co. v. Segars,* 216 Tenn. 154, 391 S.W.2d 393 (1965), we held that the insurer may be estopped to deny liability for risks not covered in the policy, by the negligence of the agent. The insured had purchased a certificate of credit life insurance which would pay off the balance of the insured's loans to his bank in the event of his death. Less than three weeks before, the insured

had suffered a heart attack, but the bank officer failed to inquire as to the health of the insured. The insurance contract provided: "This insurance shall not take effect ... unless the insured-debtor ... is in sound health ... on the effective date hereof." The insured died of another heart attack within two days after the issuance of the insurance certificate. We held that:

> The negligence or mistake of an agent within the scope of his authority is the responsibility of his principal, the insurance company. *Henry v. Southern Fire & Casualty Co., supra.* ...
>
> We think it was negligence for the agent to issue the certificate of insurance without inquiring as to the insured's health.... His act was the act of the insurer and the company should be the party to suffer.

With respect to such a situation it is said in Vance, *Insurance,* 3rd Ed., Anderson, Section 89, page 540:

> "After all, the man on the street purchases his insurance policy in very much the same way that he purchases his automobile or his reaper or other chattels. He knows no more about the making of a contract of insurance than he does about the making of an automobile, and he naturally relies upon the skill and good faith of those who hold themselves out to be experts in such matters, by advertising their wares for sale. It would seem to be the clear duty of the insurer, professing to draw an instrument protecting the applicant's property against certain defined perils, to exercise due diligence to supply a policy which will effect the purpose intended. Any damage caused to the applicant through the agent's mistakes or negligence in making inquiries that he should know to be pertinent should rest on the insurer. The situation seems to be strikingly analogous to that expressed in the familiar rule of the law of sales to the effect that a vendor supplying an article which he knows is to be used for a specific purpose impliedly warrants that the article furnished is suitable for that purpose."

*Id.* 391 S.W.2d at 397–98. We made no attempt in *Segars* to determine whether the condition of good health was part of an insuring or exclusionary clause.

In *Hardison v. Continental Casualty Co.*, 56 Tenn.App. 644, 410 S.W.2d 729 (1966), however, the Court of Appeals seized upon the *dicta* from its opinion in *Henry, supra,* and created for the first time a distinction between language appearing in "insuring" and "exclusionary" clauses. As authority for this distinction, the court erroneously found "we have no case in Tennessee in which the doctrine of estoppel was made the basis of recovery except where the loss was within the coverage provided by the insuring clause of the contract." *Id.* 410 S.W.2d at 733. *See, e.g., Henry* and *Miller, supra,* in which the losses were clearly outside the provisions of the insuring clause. The court stated the principle that "estoppel is available to protect a right, but never to create one," and concluded that "in order for there to be a recovery on the basis of an estoppel, a paramount condition must be met, the acts of the agent relied on for the estoppel and the estoppel arising on account of these acts must result in a liability which would be within the *insuring clauses* of the contract." *Id.* at 733 (emphasis added). The court quoted 45 C.J.S. *Insurance* § 674 as follows:

> **Extension of risk.** As a general rule, the doctrines of waiver or estoppel can have a field of operation only when the subject matter is within the terms of the contract, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Accordingly, it has been held by the weight of authority that *waiver or estoppel cannot create a contract of insurance or so apply as to bring within the coverage of the policy property, or a loss or risk, which by the terms of the policy is expressly excepted or otherwise excluded.* As has sometimes been said, the doctrines of waiver or estoppel cannot be successfully invoked to create a primary liability, or a liability for a benefit not contracted for at all.

*Id.* (emphasis added). Clearly, this section makes no distinction between insuring clauses and exclusionary clauses of contracts. Rather, this section states a more general rule, applicable in some jurisdictions, but which has never been the law in Tennessee. In *Hardison,* the Court of Appeals failed to recognize the fact that this Court's holdings in *Segars, Trinkle,* and *McCrea, supra,* as well as the Tennessee agency statute, make no distinction between insuring and exclusionary clauses.

Five years later, in *Smith v. Continental Insurance Co.*, 63 Tenn.App. 48, 469 S.W.2d 138 (1971), the Court of Appeals corrected its error. The insured had purchased a policy covering the inventory of its auto dealership. The agent told the insured to report only new purchases of inventory, since the company already knew of the insured's existing inventory. However, the insurer charged premiums, pursuant to the written policy, based only upon the new inventory reported monthly by the insured, not upon the value of the insured's total inventory. A large loss was sustained, and the insurer insisted that the unreported inventory was not covered. The Court of Appeals recognized the importance of Tenn.Code Ann. § 56–6–147:

> The obvious intention of the Legislature is to make an insurance company responsible for the acts of the person who assumes really to represent and act for it in these particulars, *and to change the rule of law that the insured must at his peril know whether the person with whom he is dealing has the power he assumes to exercise, or is acting within the scope of his authority ....*
>
> ....
>
> Justice and law therefore require that the insurer shall be held to sanction what the agent agrees to and upon which the insured relies, and knowledge of matters affecting the risk or conditions of the policy acquired by the agent in soliciting the insurance is the knowledge of the insurer.

*Id.* 469 S.W.2d at 147 (emphasis added) (quoting *Maryland Cas. Co. v. McTyier, supra,* 266 S.W. at 769, and *Shelby Mutual*

*Ins. Co. v. Wilson,* 53 Tenn.App. 428, 383 S.W.2d 791, 801 (1964)).

*Dallas Glass v. Bituminous Fire & Marine Insurance Co.,* 544 S.W.2d 351 (Tenn. 1976), is the latest case in which this Court considered whether estoppel may be used to broaden the coverage of an insurance policy. Coincidentally, the insured had purchased a cargo policy similar to the one presently before us, which indemnified for loss "caused by collision of the vehicle." A loss occurred 1,200 miles from Hendersonville, Tennessee, when the insured's cargo struck an overpass without contact between the tractor-trailer unit and the overpass. In addition, the policy contained the following endorsement:

> This policy covers ... the property of the Insured ... within a radius of 500 miles of Hendersonville, Tennessee.

*Id.* at 352. The insureds testified that the 500–mile limitation had never been pointed out to them, and the insurance agent admitted that full cargo coverage was requested and that he had knowledge that the insured's shipments typically exceeded the 500–mile limitation. A three-two majority of this Court stated:

> It is indeed a recognized principle of insurance law that a contract of insurance cannot be created by waiver or estoppel. However, this general statement, although well supported by case law, should be considered in light of the facts to which it has been applied.

*Id.* at 353. The majority proceeded to consider, in the following order, the facts of *Hardison Seed Company, supra; Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc.,* 493 F.2d 257 (6th Cir.1974); *Miller v. Monticello, supra,* 50 Tenn.App. 363, 361 S.W.2d 496 (1961); *Shelby Mutual Insurance Co. v. Wilson,* 53 Tenn.App. 428, 383 S.W.2d 791 (1964); *Smith v. Continental, supra,* 63 Tenn.App. 48, 469 S.W.2d 138 (1971); and *Bailey v. Life & Casualty Insurance Company of Tennessee, supra,* 250 S.W.2d 99 (Tenn.App.1951). Quoting *Bailey, supra,* with approval, the majority held:

> *Any* contractual provision in a policy of insurance, made for the benefit of the

insurer, not mandatory under a statute, may be waived by an officer or agent of [the] insurer who has actual or apparent authority so to do.

*Dallas Glass,* 544 S.W.2d at 355 (emphasis added) (citations omitted).

The *Dallas Glass* court then remanded the case to the Court of Appeals for consideration of the remaining issue, whether the plaintiff was entitled to recover under principles of waiver and estoppel where the insurance policy covered a collision of the vehicle, but not a collision of the cargo. On remand, the Court of Appeals held in an unreported decision that the defendant had waived the "limitation" that there must be a collision of the vehicle, and was therefore estopped to deny coverage for collision of the cargo.

To be sure, there is *dicta* in our opinion in *Dallas Glass* to the effect that

> [i]f the insured ... had cargo insurance limited to some particular peril, it is doubtful that the insurance could be changed through the principles of waiver or estoppel to protect against some entirely different risk. We do not have in this case, however, a question of a change in the nature of the coverage, but simply a condition or limitation upon a risk which was actually underwritten, and such conditions and limitations are subject to waiver....

*Id.* at 355. However, the Court's *holding* clearly brings within the coverage of the policy a risk which was not expressly covered. That holding makes no distinction between insuring and exclusionary clauses; if the majority was persuaded that the 500–mile limitation was part of an "exclusionary" clause, the majority did not necessarily consider whether estoppel could be used to broaden coverage contained in an "insuring" clause. Therefore, it is fair to say that no holding of this Court has ever necessarily considered and sanctioned a rule prohibiting in an appropriate case, the use of estoppel to broaden the coverage of language found in an "insuring clause."

In a dissent by Justice Henry, joined by Justice Fones, the majority was chastised for ignoring the "fact" that the 500–mile

limitation was part of an insuring clause, as opposed to an exclusionary clause. The dissent's basic premise was that "there is a distinction between the coverage afforded by an insurance contract and an exclusionary provision." *Id.* at 356.

Justice Henry concluded by saying:

In complete candor, I concede that the majority reached a just conclusion under the peculiar facts and circumstances of this case. This was a hard case and "hard cases make bad law." *I would be willing to change the rule of law so as to provide that coverage may be extended by estoppel,* under proper pleadings, and pursuant to clear, cogent and convincing proof, but cannot be a party to circumventing the law as, I submit, the majority does in this case.

*Id.,* dissent at 356, 359–60 (emphasis added).

As authority for a distinction between insuring and exclusionary clauses, the dissent cites the following quotation:

An estoppel may be relied upon to protect an insured against the enforcement of an exclusion in the contract under a proper factual setting; however, it is the prevailing view—followed in the overwhelming majority of the jurisdictions of this country—that the use of the doctrine will not be sanctioned to broaden the policy coverage or to provide protection against risks not specified in the policy.

*Id.* at 356, citing annotation, 1 A.L.R.3d 1139 (1965). However, that very annotation recognizes that:

[I]n many instances the question whether a particular policy provision is a coverage or exclusionary provision or whether it is a condition of forfeiture is a *mere matter of phraseology,* and that an insurance company should not be permitted to avoid the consequences of acts or omissions claimed to constitute a waiver or estoppel by the expediency of using words which make conditions into limitations of coverage.

1. *Harr v. Allstate Ins. Co.,* 54 N.J. 287, 255 A.2d 208 (1969); *Tate v. Charles Aguillard Ins. & Real Estate, Inc.,* 508 So.2d 1371, 1374 (La.1987);

Annot., 1 A.L.R.3d § 2(c) at 1146–47 (1965) (emphasis added). The editors of the annotation also recognized the contrary view, as represented in decisions from California, Delaware, Idaho, South Dakota, and Virginia, and that a number of other courts evade the "general rule" by "construing" the clause in question to be one which does not relate to the coverage afforded by the policy. Since the annotation was published, New Jersey, Louisiana, and Vermont [1] have concluded that the principles of waiver or estoppel may broaden coverage and cover risks not specified in the policy.

OTHER JURISDICTIONS

As noted above, a substantial minority of courts hold directly that estoppel is available to broaden the coverage of an insurance policy. *See, e.g., Harr v. Allstate Ins. Co.,* 54 N.J. 287, 255 A.2d 208 (1969); *Tate v. Charles Aguillard Ins. & Real Estate, Inc.,* 508 So.2d 1371, 1374 (La.1987); *Golden Gate Motor Transport Co. v. Great American Indemnity Co.,* 6 Cal.2d 439, 58 P.2d 374 (1936); *Ivey v. United National Indemnity Company,* 259 F.2d 205 (9th Cir.1958) (applying California law); *American Surety Co. of New York v. Heise,* 136 Cal.App.2d 689, 289 P.2d 103 (Dist.Ct.App. 1955); *Beach v. United States Fidelity & Guaranty Co.,* 205 Cal.App.2d 409, 23 Cal. Rptr. 73 (Dist.Ct.App.1962); *Modica v. Hartford Accident and Indemnity Company,* 236 Cal.App.2d 588, 46 Cal.Rptr. 158 (Dist.Ct.App.1965); *Mutual Benefit Life Insurance Co. v. Bailey,* 5 Storey 215, 55 Del. 215, 190 A.2d 757 (1963); *United Pacific Insurance Co. v. Meyer,* 305 F.2d 107 (9th Cir.1962) (applying Idaho law); *Preferred Risk Mutual Insurance Co. v. Thomas,* 372 F.2d 227 (4th Cir.1967) (applying South Carolina law); *Farmers Mutual Automobile Insurance Co. v. Bechard,* 80 S.D. 237, 122 N.W.2d 86, 1 A.L.R.3d 1124 (1963); *State Automobile Casualty Underwriters v. Ruotsalainen,* 81 S.D. 472, 136 N.W.2d 884 (1965); *Dodge v. Aetna Casualty & Surety Co., Vt.,* 127 Vt. 409, 250 A.2d 742 (1969).

*Dodge v. Aetna Casualty & Surety Co., Vt.,* 127 Vt. 409, 250 A.2d 742 (1969).

In *Harr v. Allstate Ins. Co., supra*, the New Jersey Supreme Court commented:

> While there is a clear split of authority, with the decisions holding estoppel not available to broaden coverage presently representing the majority view, many of the cases so stating are confusing and not clear cut....
>
> We are more impressed with the decisions in those jurisdictions which hold that equitable estoppel is utilizable to bar a defense of non-coverage of the loss claimed, *i.e.*, the minority rule....
>
> These decisions all proceed on the thesis that where an insurer or its agent misrepresents, even though innocently, the coverage of an insurance contract, or the exclusions therefrom, to an insured before or at the inception of the contract, and the insured reasonably relies thereupon to his ultimate detriment, the insurer is estopped to deny coverage after a loss on a risk or from a peril actually not covered by the terms of the policy. The proposition is one of elementary and simple justice. By justifiably relying on the insurer's superior knowledge, the insured has been prevented from procuring the desired coverage elsewhere. To reject this approach because a new contract is thereby made for the parties would be an unfortunate triumph of form over substance. The fact that the insurer has received no premium for the risk or perils as to which the loss ensued is no obstacle. Any additional premium due can be deducted from the amount of the loss.

*Harr*, 255 A.2d at 218–19.

Other courts have found a separate, oral contract to provide the missing coverage, and to circumvent the rule against extension of coverage by estoppel. *See, e.g.*, *Travelers Indemnity Co. v. Holman*, 330 F.2d 142, 149 (5th Cir.W.D.Tx.1964).

Still other courts have endorsed rather strained interpretations of contract language in order to avoid the harsh results which necessarily follow from arbitrary distinctions between insuring and exclusionary clauses. Courts in Alabama, Florida, Illinois, Minnesota, Mississippi, South Carolina, Texas, and Wyoming have "construed particular policy provisions as being matters not relating to coverage and have thus held waiver or estoppel available to avoid the particular provision in question." Annot., *supra*, 1 A.L.R.3d § 4(b). *See also Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371, 1374 (La. 1987). As noted above, our own Court of Appeals has been the subject of the same criticism for its decision in *Miller v. Monticello*.

## ANALYSIS

We think it matters not whether the insurer places limitations on coverage in the insuring or exclusionary clauses of its own contract; reasonable reliance to the detriment of the insured has precisely the same result. For example, in the 1881 case of *McCrea, Maury & Co., supra*, the policy drafted by American Central Insurance Company could have purported to cover "all losses occurring during the day"; "all losses except those occurring at night"; or "all losses, but the policy is void if the insured operates at night." Likewise, in this case we think it should make no difference whether the defendant selected language covering "all damage to cargo as the result of a collision of the conveyance" (insuring clause); "no damage to cargo except as the result of a collision of the conveyance" (exclusionary clause); or "all damage to cargo, but this coverage is void unless there is a collision of the conveyance" (forfeiture clause). Regardless of which language is selected by the insurer, the insured has a valid right to expect coverage as promised by the insurer's agent. The doctrines of waiver and estoppel should be available to protect that interest, even though they have the effect of broadening the coverage of the policy.

Our holding is supported by the analogy to the law of sales which we recognized in *Vulcan Life & Accident Ins. Co. v. Segars, supra*, 391 S.W.2d at 397–98:

> The situation seems to be strikingly analogous to that expressed in the familiar rule of the law of sales to the effect that a vender supplying an article which

he knows is to be used for a specific purpose impliedly warrants that the article furnished is suitable for that purpose.

In this case, the jury believed that the Glens Falls agent had full knowledge of the type of cargo which Brown hauled and, further, had represented that the policy was fit for Brown's purpose. If insurance contracts were included in the statutory definition of "goods," Tenn.Code Ann. § 47–2–105, Glens Falls would be liable for breach of the implied warranty of fitness for a particular purpose. Tenn.Code Ann. § 47–2–315 provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose.

We find, by analogy, that the reasons for holding sellers of goods liable for implied warranties of fitness made by their agents are equally persuasive in the context of sales of insurance contracts.

We are not unmindful of the force of the argument that the insurer should not be liable for coverage for which it has received no consideration. However, the same argument can be made against the vicarious liability of all principals for the tortious acts of their agents. When the misrepresentation of the agent is viewed as an action in tort, the absence of additional consideration to the insurer is irrelevant. When viewed as an action on the insurance contract, we agree with the courts which have considered the consideration argument and concluded that:

> It is here that promissory estoppel fills the gap. The Restatement phrases it this way. "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement, *Contracts* § 90 (1932).

*Travelers Indemnity Co. v. Holman,* 330 F.2d 142, 151 (5th Cir.1964). In *Jackson v. Kemp,* 211 Tenn. 438, 365 S.W.2d 437 (1963), we adopted § 90 of the Restatement of the Law of Contracts, as a substitute for consideration for an agent's promise that the insurer would not invoke the statute of limitations as a defense, saying: "Some such rule is necessary in our society and it does not seem to us that the cases over the years are inconsistent with such a rule." *Id.* 365 S.W.2d at 440. *See also Foster v. Wilson Contracting,* 579 S.W.2d 422 (Tenn.App.1978).

We are also aware of the principle that estoppel is available to protect a right, but never to create one. *Henry County v. Standard Oil Co.,* 167 Tenn. 485, 71 S.W.2d 683 (1934). But aside from the difficulty courts have experienced in applying that rule to insurance cases, we perceive the rationale for the rule to be the same as the argument we just considered: that an insurer should not be held liable, by estoppel, for a risk for which it received no consideration. The reason for this exception to the doctrine of estoppel no longer applies where the reasonable reliance of the insured is a legally sufficient substitute for the necessary consideration. "Where the reason fails, the rule should not apply." *Hanover v. Ruch,* 809 S.W.2d 893, 898 (Tenn.1991); *Brown v. Selby,* 206 Tenn. 71, 332 S.W.2d 166, 169 (1960).

■ We are persuaded that the effort to distinguish between insuring, exclusionary, and forfeiture clauses is pointless and results in strained interpretations of contract language in order to avoid harsh results. We believe that the better view is that an insurer may be estopped to deny coverage for any loss by the misrepresentations of its agent upon which the insured reasonably relies. We are convinced that such a view is consistent with prior case law and relevant statutory law in this state.

## CONCLUSION

An insurance policy is a contract of adhesion drafted by the insurer. We decline to adopt a rule which would permit the insurer to exculpate itself from liability for the

misrepresentations of its agents, by the mere expediency of placing conditions or limitations of coverage in an insuring clause. Technical distinctions, created by the insurer within its field of expertise and exclusive control, should not dictate the fortunes of innocent insureds who reasonably rely upon the misrepresentations of agents of the insurer.

Moreover, the insurer is in a better position to minimize the frequency of occasions in which the reasonable expectations of an insured are not supported by the policy language. By training its agents in the language of its policies, and by simplifying the policy language itself, the insurer can reduce the frequency of misrepresentations and increase the difficulty of proving reasonable reliance.

■ We reaffirm the long-standing rule in Tennessee that *any* contractual provision of a policy of insurance, whether part of an insuring, exclusionary, or forfeiture clause, may be waived by the acts, representations, or knowledge of the insurer's agent. Of course, the burden of proof, as in other cases, falls upon the insured to prove that a misrepresentation was made and that the insured reasonably relied upon that misrepresentation.

"The real question in [these cases] is whether an insurance company has some special kind of immunity from legal liability for express commitments made by his direct employee acting strictly in accordance with his authority." *Travelers Indemnity Co. v. Holman*, 330 F.2d. 142, 144 (5th Cir.1964). We hold, in essence, that insurers have no such immunity.

For these reasons, the judgment of the Court of Appeals is reversed, and the jury verdict in favor of the plaintiff is reinstated. Costs are taxed to the appellee, The Glens Falls Insurance Company.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.