IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 13, 2005 Session

## JASON SIMMS v. INSURANCE COMPANY OF NORTH AMERICA

**Appeal from the Circuit Court for Rhea County**
**No. 22031     J. Curtis Smith, Judge**

---

**No. E2005-00062-COA-R3-CV - FILED OCTOBER 14, 2005**

---

The issue in this case is whether the trial court correctly granted the Defendant Insurance Company of North America ("ICNA") summary judgment based on its finding that the claimant, Jason Simms, failed to follow the loss provisions of the insurance policy and that ICNA's agent did not possess authority to waive the loss provisions. We hold there exists a genuine issue of material fact regarding the apparent authority of ICNA's agent, and therefore vacate the summary judgment and remand for trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

J. Arnold Fitzgerald and Andrew F. Tucker, Dayton, Tennessee, for the Appellant, Jason Simms.

Thomas E. LeQuire and Robert C. Denny, Chattanooga, Tennessee, for the Appellee, Insurance Company of North America.

## OPINION

### I.

Mr. Simms purchased a multi-peril crop insurance policy from ICNA through its agent, Dean Payne, in the spring of 2000. According to the affidavit of Mr. Simms, a drought in the year 2000 caused his tobacco crop to fail. Mr. Simms' affidavit further states as follows:

> I have been involved in growing tobacco several years prior to the claim for loss of [this] year 2000 tobacco crop. Every year I have planted a tobacco crop, I have purchased tobacco crop insurance. I have never made a crop insurance claim of any sort prior to the year 2000.
>
> Dean Payne, an insurance agent for Defendant, Insurance Company of North America and Mr. Payne's supervisor, both visited my farm in the summer of 1999 and spoke with me regarding multi-peril crop insurance. On the day Mr. Payne and his supervisor visited my farm, I agreed to sign up for multi-peril crop insurance for the year 2000 tobacco crop with Defendant.
>
> In the spring of 2000, I met with Dean Payne. . .to sign crop insurance application documents for multi-peril crop insurance for the year 2000 tobacco crop. He personally filled out the application for the multi-peril crop insurance.

After his 2000 tobacco crop failed, Mr. Simms made a claim under his multi-peril crop insurance policy. According to his affidavit,

> Prior to October 5, 2000, I contacted agent Dean Payne, who had sold me the insurance, to report this loss claim. Mr. Payne stated that I could go ahead and bush hog the fields where the tobacco was located and that an adjuster would come to measure acreage. Only after receiving consent of agent Dean Payne did I bush hog the crop.

The above-quoted statements from Mr. Simms' affidavit are not in dispute. ICNA denied Mr. Simms' claim on February 26, 2001, on grounds, *inter alia,* that he destroyed the crop without preserving a representative sample prior to inspection and appraisal of the loss by ICNA, thus allegedly violating the terms of the policy and voiding coverage.

Mr. Simms filed this action on February 21, 2002, alleging ICNA wrongfully denied coverage under the policy. ICNA moved for summary judgment, which the trial court granted. The trial court held "there is no genuine material factual dispute that plaintiff failed to follow loss provisions of the policy, that defendant's agent [Mr. Payne] possessed no authority to waive the loss provisions and the failure to follow the loss provisions absolves defendant of liability under the policy as a matter of law."

## II.

Mr. Simms appeals, raising the issue, which we restate, of whether the trial court erred in granting ICNA summary judgment.

Our standard of review regarding summary judgment is well settled. A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993).

## III.

The Tennessee Supreme Court has stated as follows regarding how our courts generally construe insurance policies:

> It is a general principle, pervading the law of all forms of insurance,
>
> that policies shall be liberally construed in favor of the insured. This because courts do not shut their eyes to realities; they know that the policy is a contract of "adhesion," i.e. not one which the parties have reached by mutual negotiation and concession, not one which truly expresses any agreement at which they have arrived, but one which has been fixed by the insurer and to which the insured must adhere, if he chooses to have insurance...As such, we attempt to construe insurance contracts so as to provide coverage.

*Alcazar v. Hayes,* 982 S.W.2d 845, 851-852 (Tenn. 1998)(internal citations omitted).

The language of the insurance policy upon which ICNA relies provides as follows:

**14. Duties in the Event of Damage or Loss.**

Your duties -

(a) In case of damage to any insured crop you must:

\* \* \*

(3) Leave representative samples intact for each field of the damaged unit as may be required by the Crop Provisions; and

(4) Cooperate with us in the investigation or settlement of the claim, and, as often as we reasonably require:

(i) Show us the damaged crop;

(ii) Allow us to remove samples of the insured crop; and

(iii) Provide us with records and documents we request and permit us to make copies.

(b) You must obtain consent from us before, and notify us after you:

(1) Destroy any of the insured crop that is not harvested;

(2) Put the insured crop to another use;

(3) Put the acreage to another use; or

(4) Abandon any portion of the insured crop. We will not give consent for any of the actions in sections 14(b)(1) through (4) if it is practical to replant the crop or until we have made an appraisal of the potential production of the crop.

In addition, the "Multiple Peril Crop Insurance Quota Tobacco Crop Provisions" portion of the policy provides:

**12. Duties In The Event of Damage or Loss.**

In accordance with the requirements of section 14 of the Basic Provisions, any representative samples we may require of each unharvested tobacco type must be at least 5 feet wide (at least two rows) and extend the entire length of each field in the unit. The samples must not be harvested or destroyed until after our inspection.

As already noted, it is undisputed that, notwithstanding the above provisions, when Mr. Simms called ICNA agent Dean Payne to report the loss, Mr. Payne told Mr. Simms to "go ahead" and bush hog the fields containing the failed tobacco crops. Mr. Simms argues that under these circumstances, ICNA should be equitably estopped from denying coverage for doing that which its agent told him to do, *i.e.,* bush hog the fields and replant with wheat.

ICNA's response to this estoppel argument is twofold. First, it argues that the following provision of the insurance policy precludes Mr. Simms from asserting such an argument:

This insurance policy is reinsured by the Federal Crop Insurance Corporation (FCIC) under the provisions of the Federal Crop Insurance Act, as amended (7 U.S.C. 1501 et seq.) (Act). All provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act. The provisions of the policy are published in the Federal Register and codified in chapter IV of title 7 of the Code of Federal Regulations (CFR) under the Federal Register Act (44 U.S.C. 1501 et seq.), and *may not be waived or*

*varied in any way by the crop insurance agent or any other agent* or employee of FCIC or the company.

[Emphasis added.] Second, ICNA argues that Mr. Payne was without actual or apparent authority to authorize Mr. Simms to destroy the tobacco crop prior to its inspection of the fields.

We first address the waiver argument. The policy at issue is a standardized crop insurance policy issued in accordance with the Federal Crop Insurance Act ("FCIA"). As the Supreme Court of Kentucky recently stated in a case similar to this one,

> The FCIA was enacted in 1938 as part of the second President Roosevelt's "New Deal." Its main purpose was "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502(a). The FCIA also established the FCIC. 7 U.S.C. § 1503. Farmers can obtain crop insurance under the FCIA by either being issued insurance directly through the FCIC, or by receiving insurance from a private company reinsured by the FCIC. 7 U.S.C. § 1508(a)(1). In the instant case, the policy was obtained from a private company, American Growers. In addition, all reinsured policies must comply with the requirements of the FCIA and the regulations of the FCIC. 7 C.F.R. § 400.164.

*Dailey v. American Growers Insurance*, 103 S.W.3d 60, 64 (Ky. 2003). The *Dailey* Court rejected the defendant insurance company's argument that the United States Supreme Court's opinion in *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed 10 (1947) protected it from a waiver or estoppel claim, stating:

> American Growers contends that application of this principle in the context of crop insurance is precluded by the "*Merrill* doctrine." In *Federal Crop Insurance Corporation v. Merrill, supra,* the FCIC had issued insurance on a spring wheat crop that had been reseeded on winter wheat acreage in violation of federal wheat crop insurance regulations. *Id.* at 382, 68 S.Ct. at 2. Relying on the doctrine of estoppel, the plaintiff in *Merrill* claimed that the FCIC should be required to honor his claim because the FCIC's agent had advised him prior to writing the policy that the entire crop was insurable. *Id.* The United States Supreme Court disagreed, holding that the FCIC was not bound by "the rules of law whereby private insurance companies are rendered liable for the acts of their agents ...." *Id.* at 383 n. 1, 68 S.Ct. at 3 n. 1. Noting that "[m]en must turn square corners when they

> deal with the Government," the Court held that the FCIC's agent could not bind the public treasury in contravention of federal law. *Id.* at 384-85, 68 S.Ct. at 3-4 (*quoting Rock Island, A. & L.R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920)). American Growers claims that because it insures crops and is regulated and reinsured by the FCIC, it enjoys *Merrill* protection.

*Dailey*, 103 S.W.3d 60, 68-69 (Ky. 2003)(Cooper, J., concurring).  In a well-reasoned concurrence joined by five members of the seven-Justice panel, the Court held that "[t]he *Merrill* doctrine, however, generally does not apply to private insurers." *Id.* at 69.  We agree with the reasoning in the *Dailey* concurrence, see *id.* at 69-70, and with the Court's conclusion that "[t]he mere fact that the FCIC provides reinsurance coverage to private crop insurance companies and heavily regulates those companies does not entitle them to *Merrill* protection." *Id.* at 70; *accord Rain & Hail Ins. Servs. Inc. v. Vickery,* 618 S.E.2d 111 (Ga. Ct. App. 2005).  Thus, the *Merrill* decision, holding that statements made by agents of the FCIC cannot bind the FCIC by operation of waiver or estoppel,  does not bar Mr. Simms' estoppel or waiver argument in this case because the Defendant, ICNA, is a private insurer.

In the seminal case of *Bill Brown Constr. Co., Inc. v. Glens Falls Ins. Co.,* 818 S.W.2d 1 (Tenn. 1991), the Tennessee Supreme Court reaffirmed the "long-standing rule in Tennessee that *any* contractual provision of a policy of insurance, whether part of an insuring, exclusionary, or forfeiture clause, may be waived by the acts, representations, or knowledge of the insurer's agent."  *Id.* at 13 (emphasis in original).  This rule is supported by an agency statute, Tenn. Code Ann. § 56-6-115(b), which provides in relevant part:

> An insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising from the application for insurance or any policy issued in connection therewith between the insured or insured's beneficiary and the insurer, as the agent of the insurer and not the insured or insured's beneficiary. This provision shall not affect the apparent authority of an agent.

Our courts construe this statute liberally in favor of the insured in order to "prevent the insurance company from denying responsibility for representations and actions from the agent from whom applications are voluntarily accepted and to protect an applicant who relies on such representations or actions."  *Ralph v. Pipkin,* No. W2004-0179-COA-R3-CV, 2005 WL 1220132 at *6 (Tenn. Ct. App. W.S., filed May 17, 2005); *Bill Brown Constr. Co.,* 818 S.W.2d at 4; *see also Maryland Cas. Co. v. McTyier*, 266 S.W. 767, 769 (Tenn. 1924).

The *Bill Brown* Court further stated that "[a]n agent acting within the scope of his apparent authority, though exceeding his authority, binds his principal." *Id.,* 818 S.W.2d at 6 (quoting *Dixon*

*v. Pickle,* 327 S.W.2d 50 (Tenn. Ct. App. 1959)). Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which the agent is presented as having, such that a reasonably prudent person, using diligence and discretion in view of the party's conduct, would naturally suppose the agent to possess. *V.L. Nicholson Co. v. Transcon Investment and Financial Ltd., Inc.,* 595 S.W.2d 474, 483 (Tenn. 1980). "Generally, to prove apparent agency one must establish (1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment." *White v. Methodist Hosp. South,* 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992).

Turning to the facts of this case, it is undisputed that when Mr. Simms lost his tobacco crop, he called ICNA's agent, Mr. Payne, who was the representative that had visited his farm and filled out the insurance application, and with whom Mr. Simms had all his prior dealings. As Mr. Simms points out, because there is no provision in the policy, or elsewhere in the record before us, containing specific instruction for making a claim, or directing a claimant to contact any other person, he called the person with whom he had dealt. It is also undisputed that agent Payne, having been told that Mr. Simms was making a crop loss claim, told Mr. Simms to "go ahead" and bush hog his tobacco fields. Only after receiving this consent did Mr. Simms do so, in accordance with the terms of the policy.

ICNA filed two affidavits supporting its motion for summary judgment, those of Jeff Malcom, a vice president of Rain & Hail, LLC, the managing general agent responsible for administration of the policy issued by ICNA, and Wayne Lehman, the insurance adjuster for Mr. Simms' loss claim. Neither of these affidavits addresses the issue of either actual or apparent authority of agent Payne to instruct Mr. Simms to destroy his crop, or to waive provisions of the insurance policy. The affidavits state only that "[n]o written consent was provided by [ICNA] or Rain & Hail, LLC, to Plaintiff authorizing him to destroy his crops" and "Plaintiff destroyed the crop without written consent of [ICNA] or Rain & Hail, LLC. . ." There is no evidence in the record that agent Payne lacked either apparent or actual authority to take the actions at issue in this case.

Mr. Simms' affidavit does not specifically state that he relied on agent Payne's direction to destroy his crops. Although it would have been better practice to include such a statement in his affidavit, it requires no imagination to draw the logical inference that Mr. Simms' action, taken at agent Payne's direction, was in reliance upon such direction. Our summary judgment standard requires us to draw reasonable inferences in favor of the non-movant. *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993); *see also White v. Methodist Hosp. South,* 884 S.W.2d at 646-48 (finding genuine issue of material fact notwithstanding "no direct proof in the record regarding plaintiff's reliance.").

We believe that under these facts and the authorities discussed above, the question of whether agent Payne had apparent authority to authorize Mr. Simms to bush hog his crop should be presented to a jury. We further find that a reasonable construction of the insurance policy in favor of providing coverage to the insured yields the conclusion that preserving a representative sample of the failed crop would not necessarily in all cases be required. The policy requires a farmer to "leave

representative samples intact for each field of the damaged unit as *may* be required by the Crop Provisions," and the Crop Provisions provide "any representative samples we *may* require of each unharvested tobacco type must be at least 5 feet wide. . ." (Emphasis added).

## IV.

For the aforementioned reasons, the judgment of the trial court granting ICNA summary judgment is vacated, and the case is remanded for trial. Costs on appeal are assessed to the Appellee, Insurance Company of North America.

                     _____

                          SHARON G. LEE, JUDGE