S97Q1276. EAST TENNESSEE MORTGAGE COMPANY, INC. v. UNITED STATES FIDELITY & GUARANTY COMPANY et al.
(491 SE2d 333)

CARLEY, Justice.

Blue Ridge Mountain Marina, Inc. (Blue Ridge) borrowed money from First National Bank of Chatsworth (FNB) and, as a condition of the loan, was required to obtain hazard insurance on the property securing the loan. United States Fidelity & Guaranty Company (USF&G) issued an insurance policy, which contained a "loss-payable" clause requiring that payment for any covered loss be made to FNB. A covered loss occurred on January 9, 1988. USF&G received notice of this loss from Blue Ridge and, pursuant to Blue Ridge's direction, improperly made payment for the loss to an entity other than FNB. Only after Blue Ridge's loan went into default, but before July 1991, did FNB first learn of the covered loss and the wrongful

payment of the insurance proceeds by USF&G. FNB took possession of the property and called upon the guarantor of the loan to discharge Blue Ridge's debt. Subsequently, FNB assigned its interest to East Tennessee Mortgage Company (ETM), a company owned by the guarantor. On September 16, 1992, ETM brought suit against USF&G in the State Court of DeKalb County to recover for the improper payment of the insurance proceeds. Thereafter, the case was removed to the United States District Court for the Northern District of Georgia, where USF&G moved for summary judgment based upon the "no-suit" clause in the insurance policy, which provides:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

The district court granted summary judgment in favor of USF&G. On appeal, the Eleventh Circuit United States Court of Appeals certified the following three questions to this Court:

> (1) Is the no-suit clause of the policy described above applicable to the mortgagee without regard to its knowledge of the loss? In other words, does the no-suit clause operate broadly or is there a negative pregnant in the proof-of-loss clause such that the no-suit clause binds the mortgagee only when the mortgagee receives notice following an insured's failure to provide a proof of loss?

> (2) If the no-suit clause is applicable to the mortgagee without regard to its knowledge, does the insurer's improper payment to the insured and the lack of notice to the mortgagee constitute a waiver of the no-suit clause or estop the insurer from relying on this clause?

> (3) If either question (1) or question (2) is resolved in favor of the mortgagee, will the instant suit be time-barred nonetheless because suit was brought more than one year after the mortgagee and its assignee learned of the loss and improper payment?

*East Tenn. Mtg. Co. v. U. S. Fidelity &c. Co.*, 111 F3d 97, 100 (11th Cir. 1997).

The first certified question relates to whether there is any interplay between the "no-suit" clause and the "proof-of-loss" clause. In relevant part, the "proof-of-loss" clause provides that, if the insured

fails to render proof of loss, then the mortgagee, upon notice, shall do so and shall be subject to the policy provision relating to the time of bringing suit. ETM contends that the mortgagee must adhere to the "no-suit" clause *only* where the insured fails to comply with the "proof-of-loss" clause and that, conversely, where, as here, the insured did submit a timely proof of loss, the mortgagee *never* becomes subject to the "no-suit" clause. "This reading of the contract, however, ignores the whole for an overly strict consideration of each part standing alone." *Edwards v. Atlantic Ins. Co.*, 203 Ga. App. 608, 609 (1) (417 SE2d 410) (1992) (wherein the insured argued that the "no-suit" clause was not applicable because it appeared in the fire policy, but not in the special building form policy). The "proof-of-loss" clause does not override the "no-suit" clause, but simply provides that, within 60 days after notice of the insured's failure to file a proof of loss, the mortgagee itself can file a proof of loss. If the mortgagee files proof of loss within the 60-day period, the "proof-of-loss" clause results in the continued application of the terms of the contract as to time of bringing suit, just as if the insured had rendered a timely proof of loss. See *World of Tires v. American Ins. Co.*, 520 A2d 1388, 1390 (Pa. Super. 1987); *Greater Providence Trust Co. v. Nationwide Mut. Fire Ins. Co.*, 355 A2d 718, 720 (R.I. 1976). Accordingly, the fact that Blue Ridge filed a timely proof of loss does not cause the "no-suit" clause to be inapplicable to the mortgagee.

By its terms, the "no-suit" clause applies to a "suit or action on this policy. . . ." A strong line of authority supports the proposition that any form of action, growing out of an insurance contract, is governed by this limitations provision contained in the policy. 20A Appleman, Insurance Law & Practice, p. 456, § 11603 (1980). In Georgia, regardless of the form of the action, "if the source of the right claimed has evolved from the written contract of insurance, the limitations contained in it supersede any other general statutory limitations. [Cits.]" *Modern Carpet Indus. v. Factory Ins. Assn.*, 125 Ga. App. 150, 152 (186 SE2d 586) (1971); *Reece v. Mass. Fire &c. Ins. Co.*, 107 Ga. App. 581, 585 (130 SE2d 782) (1963). Thus, an action commenced by a mortgagee based upon the insurer's improper payment for a covered loss is an action "on the policy" for the recovery of a "claim." See *Seafirst Commercial Corp. v. U. S. Fidelity &c. Co.*, 780 F2d 1290, 1296 (5th Cir. 1986).

Therefore, the "no-suit" clause required ETM or its assignor to commence an action for misdirection of the funds by USF&G within 12 months of the "inception of the loss." Several cases have held that "inception of the loss" refers to the actual loss to the insured. *Herring v. Middle Ga. Mut. Ins. Co.*, 149 Ga. App. 585, 586 (254 SE2d 904) (1979); *World of Tires v. American Ins. Co.*, supra at 1391; *Zuckerman v. Transamerica Ins. Co.*, 650 P2d 441, 447 (Ariz. 1982). However, in

none of those cases was the mortgagee suing for an improper payment of a claim by the insurer. Where, as here, the policy contains the standard loss payable clause, the mortgagee's action is not based upon the contract between the insurer and the insured, but upon the separate and distinct contract between the insurer and the mortgagee. *Decatur Fed. Sav. &c. Assn. v. York Ins. Co.*, 147 Ga. App. 797, 798 (3) (250 SE2d 524) (1978). There is no reason that the phrase "inception of the loss" in the "no-suit" clause must mean the date of the actual loss to the insured, when the actual loss underlying the suit is that suffered by the mortgagee at the time the insurer improperly paid the insurance proceeds in breach of the insurer's separate contract with the mortgagee.

> [The "no-suit" clause here] drastically shortens the otherwise applicable six-year limitation on simple contracts, and, where its application would work a forfeiture of the policy benefit, "the court will strictly construe the provision against the insurance company. . . ." [Cit.]

*Decatur Fed. Sav. &c. Assn. v. York Ins. Co.*, supra at 798 (2). The "no-suit" clause, strictly construed against USF&G, permits the mortgagee or its assignee to file an action to recover for the breach of the mortgagee's separate contract at any time within 12 months of the date of the mortgagee's loss occasioned by USF&G's improper disbursement of the insurance proceeds, rather than within 12 months of the date of the loss of the property suffered by Blue Ridge.

It is undisputed that suit was not brought against USF&G by ETM or its assignor within 12 months of the date of the improper payment of the insurance proceeds. However, "[w]hile admittedly the contractual period limiting the bringing of an action is valid, it must not be held to be unconscionably inflexible." *Buffalo Ins. Co. v. Steinberg*, 105 Ga. App. 366, 372 (1) (124 SE2d 681) (1962). Contractual stipulations in an insurance policy which require that suit be brought within a certain period of time "are not necessarily in every instance to be literally complied with in order to prevent a forfeiture of the policy or to allow a recovery thereon." *Pilgrim Health &c. Ins. Co. v. Chism*, 49 Ga. App. 121, 122 (174 SE 212) (1934). The circumstances may be such as to excuse a delay in compliance. *Pilgrim Health &c. Ins. Co. v. Chism*, supra.

> It was held in *Pilgrim Health &c. Ins. Co. v. Chism*, [supra at 123 (2)], an action on a life insurance policy where the insured's death was not discovered until after the time for bringing suit had passed, that if failure to discover the death was not due to any neglect on the part of the beneficiary, the

action could be maintained even though the contractual limitation had passed.

*Livaditis v. American Cas. Co.*, 117 Ga. App. 297, 301 (2) (160 SE2d 449) (1968). The failure here to discover the improper payment at the time it occurred was attributable to the actions of USF&G and was not the fault of the mortgagee or ETM as assignee. Accordingly, literal compliance with the "no-suit" clause was rendered impossible and the delay in compliance was legally excused. See *Pilgrim Health &c. Ins. Co. v. Chism*, supra.

However, delay in compliance cannot be excused indefinitely. In order to comply with the "no-suit" clause and thereby prevent a forfeiture of the policy, the loss payee or its assignee was required to commence an action within 12 months after discovery of USF&G's misdirection of funds. *Pilgrim Health &c. Ins. Co. v. Chism*, supra at 123 (2). Because it is undisputed that neither the mortgagee nor ETM commenced an action within 12 months after discovery of USF&G's improper disbursement of the insurance proceeds, we conclude that the "no-suit" clause does bar ETM's action. See *Livaditis v. American Cas. Co.*, supra.

Accordingly, the answer to the first and third questions is that, although the "no-suit" clause applies broadly, ETM or its assignor should have commenced an action within 12 months of discovery of the misdirection of funds. Accordingly, we need not answer the second question.

*Certified questions answered. All the Justices concur.*

DECIDED OCTOBER 6, 1997 —
RECONSIDERATION DENIED OCTOBER 31, 1997.

*Kutak Rock, David J. Gellen, Michael. K. Wolensky, Thomas R. Todd, Jr.,* for appellant.
*Carter & Ansley, Ben Kingree III,* for appellees.