**Peter R. DAILEY, III, Appellant,**

v.

**AMERICAN GROWERS INSURANCE and American Agrisurance, Inc., Appellees.**

**No. 2001–SC–0364–DG.**

Supreme Court of Kentucky.

April 24, 2003.

James T. Harris, Lexington, for Appellant.

Guy Colson, Fowler, Measle & Bell, LLP, Lexington, R. Laubenthal, Paul Shotkoski, Council Bluffs, IA, R. Craig Reinhardt, Fowler, Measle & Bell, Katherine J. Hornback, Reinhardt & Associates, PLC, Lexington, for Appellees.

STUMBO, Justice.

Peter R. Dailey, III, a Kentucky tobacco farmer, brings the instant action against American Growers Insurance, an Iowa corporation that sells multiple peril crop insurance ("MPCI") policies reinsured by the Federal Crop Insurance Corporation ("FCIC"), and American Agrisurance, Inc., the marketing and service affiliate for American Growers' crop insurance business, in order to receive benefits due under a MPCI policy.[1] The Court of Appeals below affirmed the Montgomery Circuit Court's decision granting summary judgment to American Growers. Dailey now appeals such judgment. For the reasons set forth in the remainder of this opinion, we reverse.

In 1995, American Growers issued Dailey a MPCI policy, number MP–284734, through its agent Town & Ranch Insurance Company ("Town & Ranch") of Winchester, Kentucky. MP–284734 was issued in Dailey's name, using Dailey's social security number as an identification number, and was renewed for the following year. The coverage level provided under MP–284734 was fifty-five percent (55%).

In 1996, American Growers issued Dailey a MPCI policy, number MP–325886, on two farms, which are both identified by a

---

**1.** Hereinafter American Growers Insurance and American Agrisurance, Inc. will be referred to collectively as "American Growers."

farm serial number ("FSN"), FSN 1354 and FSN 2654 respectively. Both farms are serviced through the Fayette County Farm Service Administration ("FSA") Office. FSN 1354 is located in Fayette County. While the majority of the acreage of FSN 2654 is situated in Bourbon County, a small strip lies in Fayette County and is serviced by the Fayette County FSA Office. MP–325886 was issued by Hoffman, Ison & Green, Inc. ("HIG"), an agent of American Growers located in Mount Sterling, Kentucky. MP–325886 was issued under the name "Dayland Farms," an unincorporated business entity run by Dailey, using an employer identification number ("EIN") as the identification number for the policy. The coverage level provided under MP–325886 was seventy-five percent (75%).

Dailey had obtained insurance through Town & Ranch for many years, but, like other area tobacco farmers, Dailey had grown dissatisfied with the service provided by Town & Ranch. Dailey contacted Henry Alton Stull, Jr., then an employee of Town & Ranch. At the same time, Stull was also an employee of a Mount Sterling tobacco warehouse, which made annual loans to Dailey based on his tobacco crop. With Stull's assistance, it was determined that Dailey needed to secure a higher level of insurance coverage on his tobacco crop in order to secure both himself and the local warehouse against any possible crop losses. Stull completed the appropriate forms for Dailey, and then referred Dailey to the HIG agency in Mount Sterling, which subsequently issued the American Growers MPCI policy, number MP–325886, to Dailey.

Later in 1996, Dailey's tobacco crop in FSN 1354 and FSN 2654 sustained severe damage from a hail storm. Dailey then filed a claim to recover under MP–325886. American Growers sent an adjuster, Wendell Doyle, to investigate the damage. Following the investigation, Doyle prepared the required appraisal and production worksheets. Claims personnel at American Growers subsequently determined that Dayland Farms was not an insurable entity, and then voided MP–325886 and transferred all coverage for FSN 1354 and FSN 2654 to MP–284734. American Growers then issued a payment based on the level of coverage provided by MP–284734. Dailey disagreed and asserted that the claim should have been paid per the level of coverage provided by MP–325886, which would have resulted in a heftier payment.

On August 11, 1997, Dailey filed a civil action in the Montgomery Circuit Court contending that his crop loss should have been paid under MP–325886, the policy in the name of Dayland Farms, and that American Growers neglected and refused to adjust his claim in a fair, prompt, and reasonable manner. Dailey further alleged that American Growers breached and violated the terms of KRS 304.12–230, Kentucky's Unfair Claims Settlement Practices Act ("UCSPA").

American Growers moved the circuit court to grant summary judgment in its favor. The circuit court sustained said motion finding that "[MPCI] policies are subject to the regulations of the [FCIC] and are not subject to state or local rules or regulations." As a result, the court determined that American Growers properly adjusted Dailey's claim and further held that American Growers did not breach or violate the UCSPA. In its opinion affirming, a split panel of the Court of Appeals adopted the circuit court's findings verbatim. Dailey then moved this Court for discretionary review, which motion was granted. This appeal followed.

■ The primary issue this Court must consider is whether the Court of Appeals

erred in sustaining the circuit court's decision granting summary judgment to American Growers. In its order citing to 7 C.F.R. § 400.352, the circuit court determined that MPCI policies were not subject to state law. It must then be determined if the Federal Crop Insurance Act ("FCIA") and FCIC regulations preempt the laws of this state, thereby preventing Dailey from asserting his state law claims. We hold that they do not and reverse the judgment rendered by the Court of Appeals.

The FCIA was enacted in 1938 as part of the second President Roosevelt's "New Deal." Its main purpose was "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502(a). The FCIA also established the FCIC. 7 U.S.C. § 1503. Farmers can obtain crop insurance under the FCIA by either being issued insurance directly through the FCIC, or by receiving insurance from a private company reinsured by the FCIC. 7 U.S.C. § 1508(a)(1). In the instant case, the policy was obtained from a private company, American Growers. In addition, all reinsured policies must comply with the requirements of the FCIA and the regulations of the FCIC. 7 C.F.R. § 400.164.

In its order granting American Growers' motion for summary judgment, the circuit court apparently relies on the following language from 7 C.F.R. § 400.352(a):

No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the [FCIC].

However, 7 C.F.R. § 400.352(b)(4) provides that "nothing herein is intended to preclude any action on the part of any authorized ... State court or any other authorized entity concerning ... the regulations, any contract or agreement authorized by the [FCIA] or by regulations or procedures issued by the [FCIC]." This language suggests to this Court that the circuit court below was not precluded from entertaining this action, which essentially is a bad faith breach of contract claim. "The simple fact that Congress has established an ordered regulatory scheme is insufficient to preempt all contract claims involving crop insurance." *Agre v. Rain & Hail LLC,* 196 F.Supp.2d 905, 911 (D.Minn.2002). Furthermore, 7 C.F.R. § 400.351 provides:

The regulations contained in this subpart are issued pursuant to the [FCIA] ... to prescribe the procedures for federal preemption of State laws and regulations *not consistent with the purpose, intent, or authority of the [FCIA].* These regulations are applicable to all policies of insurance, insured or reinsured by the [FCIC], contracts, agreements, or actions authorized by the [FCIA] and entered into or issued by FCIC. (Emphasis added)

Based on this statutory language, it is our opinion that only those state and local laws or regulations which are inconsistent with the "purpose, intent, or authority" of the FCIA will be preempted. Consequently, we do not believe that the claims Dailey presents are inconsistent with the FCIA or FCIC regulations.

While this Court has not previously addressed this issue, we find persuasive case law from other jurisdictions in support of the decision we reach today. A similar

result was rendered in a recent South Carolina appellate case. In *Lyerly v. American National Fire Insurance Company*, 343 S.C. 401, 540 S.E.2d 469 (2000), the insured purchased insurance for his tobacco crop from a private insurance provider reinsured by the FCIC. The policy provided that if the insured brought suit for crop loss or damage, then the insured must do so within twelve months of the damage occurrence. *Id.* at 470. The insurance provider moved for summary judgment because the insured untimely filed suit thirteen months after his tobacco crop was damaged. *Id.* The insurance provider also argued that any state law causes of action were preempted by federal law and the insured's only remedy was the "construction and enforcement of the policies of insurance pursuant to the terms thereof." *Id.* The insured countered by arguing that the period for filing an insurance claim could not be contractually shortened under the applicable state statute. *Id.* at 471. The circuit court, however, agreed with the insurance provider and granted summary judgment based on its finding that the insured's action was not timely filed pursuant to the insurance policy. *Id.* The same court further determined that state law was not applicable because all laws governing the action were preempted by federal law. *Id.* The South Carolina Court of Appeals disagreed, holding that under the circumstances, state law was not inconsistent with the FCIA, and therefore, the insured's state claim was not preempted by federal law. *Id.* at 474.

Of the federal courts which have considered issues relating to the FCIA preempting state law, the majority have held that the FCIA and FCIC regulations do not totally preempt state law or state law causes of action. For example, the Eleventh Circuit Court of Appeals held that insureds retained traditional contract remedies against private insurance companies which issued FCIC reinsured policies. *Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Services, Inc.*, 121 F.3d 630, 635 (11th Cir.1997). In addition, the Tenth Circuit determined that the FCIA does not preempt all state law claims in suits against private insurance companies on reinsured policies. *Meyer v. Conlon*, 162 F.3d 1264, 1269–70 (10th Cir.1998). The Fifth Circuit held likewise when it could find no "clear manifestation of congressional intent to displace all state law claims by insureds against crop insurance agents." *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 686 (5th Cir.2001). Federal district courts have reached similar findings as well. *See, e.g., Nobles v. Rural Community Ins. Services*, 122 F.Supp.2d 1290 (M.D.Ala.2000); *Halfmann v. USAG Ins. Services, Inc.*, 118 F.Supp.2d 714 (N.D.Tex.2000); *Bullard v. Southwest Crop Ins. Agency. Inc.*, 984 F.Supp. 531 (E.D.Tex.1997).

While a majority of federal courts have found state law causes of action are not completely preempted by federal law, we note that some have concluded the contrary. *See Owen v. Crop Hail Management*, 841 F.Supp. 297 (W.D.Mo.1994); *Brown v. Crop Hail Management*, 813 F.Supp. 519 (S.D.Tex.1993). However, the prevailing view among the federal courts is that Congress did not intend to preempt all state laws or state law causes of action. Furthermore, and as previously mentioned in the opinion herein, we do not believe that Dailey's claims below are inconsistent with the purpose of the FCIA.

It is abundantly clear that only those state and local laws or regulations which are inconsistent with the "purpose, intent, or authority" of the FCIA will be preempted. In the circuit court below, one of the issues Dailey advanced was that American Growers violated the UCSPA.

We fail to see in what way the UCSPA is inconsistent with the FCIA, much less the regulations of the FCIC. The circuit court found that there was no violation of the UCSPA because Dailey's claim "was adjusted according to the FCIC regulations and the adjusting standards employed in the crop insurance industry." The Court of Appeals adopted the same. This was error. The issue of whether or not there was a violation of the UCSPA needs to be argued before a trier of fact during a trial. In addition, we observe that the manner in which American Growers adjusted Dailey's claim is a valid point of contention between the parties, which should also be put before a trier of fact. As a result, it is our view that there exist genuine issues of material fact warranting a trial on the merits.

We hold that Dailey's claims are not inconsistent with the FCIA or the regulations of the FCIC. It was error to award summary judgment to American Growers. "[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991). Since it has been determined that Dailey's claims based on Kentucky law are not prohibited by the federal regulations, we cannot say that it would be impossible for Dailey to produce the pertinent evidence.

Accordingly, we hereby reverse the decision of the Court of Appeals and remand this case to the Montgomery Circuit Court for further proceedings in conformity with this opinion.

All concur.

COOPER, J., also concurs by separate opinion, with LAMBERT, C.J., GRAVES, JOHNSTONE, and KELLER, JJ., joining the concurring opinion.

COOPER, Justice, concurring.

I concur fully in the majority opinion which correctly decides the only issue addressed by the trial court and the Court of Appeals, *i.e.*, whether the Federal Crop Insurance Act (FCIA) preempts a state law claim against a private insurer for damages caused by the insurer's failure to pay the proceeds due under the policy. I write separately to express my views with respect to the other issues raised by American Growers [1] in support of its claim of entitlement to a summary judgment and which are likely to be reiterated upon remand to the trial court.

In addition to its preemption claim, American Growers contends that it is entitled to summary judgment with respect to Appellant Dailey's claim under policy number MP–325886 because (1) it is protected from Dailey's estoppel claim by the "*Merrill* doctrine," enunciated in *Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); (2) the damaged crops were also insured under policy number MP–284734, which was issued in 1995 and had not been canceled, thus, coverage under that policy prevails over coverage under the subsequently issued MP–325886 (and payment under MP–284734 has been tendered to Dailey); and (3) Dailey applied for MP–325886 under his "doing business as" ("dba") name of "Dayland Farms," an entity with no insurable interest in either of the farms

---

1. American Agrisurance, Inc., is affiliated with American Growers Insurance and is the marketing and service agent for American Growers Insurance's crop insurance business. For purposes of this opinion, the two will be treated as one entity and referred to as "American Growers."

insured under that policy, and used his employee identification number (EIN) instead of his social security number (SSN) in making the application.

## I. ESTOPPEL.

■ Estoppel is at the heart of this case. A single agent, Henry Alton "Junior" Stull, drafted all three applications at issue here. Stull was an employee of New Farmers Tobacco Warehouse which served functionally as buyer, lender, and insurance agent for many local tobacco farmers. Because Dailey and other farmers were generally unable to obtain bank loans to finance their tobacco crops, the tobacco warehouse would provide the financing at the beginning of the season and would be repaid when the crop was brought in for sale at the end of the season. As the warehouse purchased each farmer's crop, it would offset the balance of the loan against the purchase price. As a condition of the loan, the warehouse also required each farmer to maintain crop insurance, the premium for which was also fronted by the warehouse and offset against the payoff when the warehouse ultimately purchased the farmer/debtor/insured's tobacco.

Stull was both an employee of the warehouse and an insurance agent for Town & Ranch Insurance Company in Winchester, Kentucky. Town & Ranch issued crop insurance policies through American Growers and had arranged for Stull to be trained at American Growers' "agent's school." Upon graduation from "agent's school," Stull established what amounted to a Town & Ranch branch office at the warehouse.

In 1995, Dailey approached Stull to apply for crop insurance as a precursor to obtaining a crop loan from the warehouse. Stull prepared the application for MP–284734 to insure Dailey's crops at fifty-five

percent of cash value and Dailey signed it. Upon receipt of the application, American Growers issued MP–284734 insuring Dailey's crops at the fifty-five percent level. At the conclusion of the tobacco season, Dailey sold his tobacco crop to the warehouse and took home his net profit after deducting that year's crop loan and insurance premium.

In 1996, Dailey again approached Stull. This time, Stull informed Dailey that, to obtain the crop loan, he would need to insure the tobacco on his two farms, farm serial number ("FSN") 1354 and FSN 2654, at a seventy-five percent level instead of the previous fifty-five percent level. Dailey assented but asked Stull if he could insure those crops with a different agency. Dailey was dissatisfied with the service he had received from Town & Ranch and further believed that the Hoffman, Ison, & Greene, Inc. ("HIG") agency in Mt. Sterling, Kentucky, would be more convenient for him. Dailey planned to move some crops to HIG in 1996 and, if satisfied with the service, eventually move all of his policies to HIG.

Despite his status as a Town & Ranch employee, Stull agreed to place the new policy with HIG. Stull explained in his deposition that HIG also sold insurance for American Growers and, "as an agent for American Agrisurance, I felt a responsibility . . . [to] save him [Dailey] for American Agrisurance [and] also [to] save him for myself." Thus, by transferring Dailey's crops to HIG, Stull could ensure that both he and American Growers retained Dailey's business. Sometime after drafting the application for MP–325886, Stull contacted Terry Bohannon, American Growers' regional claims supervisor for the Mideast Region, and asked him whether Stull "could be an agent for two different agencies." Bohannon replied that, to his

knowledge, Stull could work for two agencies.[2]

As he had done with respect to the 1995 MP–284734 application, Stull prepared the 1996 MP–325886 application and MP–284734 renewal application in their entireties. Stull, not Dailey, chose to draft the MP–325886 application in Dailey's "dba" name, "Dayland Farms," and to use Dailey's EIN number instead of his SSN number on the application. Stull testified that he made these choices in order to keep MP–325886 distinct from MP–284734. In fact, Stull testified that he used Dailey's EIN number on the MP–325886 application because he had been trained by American Growers not to use the same identification number on two different applications. Stull was fully aware that "Dayland Farms" was simply Dailey's "dba" name.

At Dailey's request, Stull kept MP–284734 in effect for a portion of Dailey's other crops (still others were insured by a third policy not at issue here), and continued to insure those crops at fifty-five percent. In order to indicate that MP–284734 no longer provided coverage for FSN 2654, Stull wrote "0" on the renewal application for MP–284734 next to the number of acres of FSN 2654 that were to be insured under that policy. This practice is sometimes referred to as "zeroing out" coverage on a particular farm. Dailey signed both policy applications on March 15, 1996. American Growers then renewed MP–284734, and issued MP–325886.

■ Given these facts, Dailey has a colorable argument that American Growers should be estopped from claiming that MP–325886 was invalid.

[I]f an insurance company through those who are authorized to speak for it, either by words or conduct, has induced an insured to refrain from doing that which he is obligated to do under the conditions of the policy, it will be deemed to have waived the requirements and may be estopped to deny the authority of its agent on whose conduct or representations the insured relied.

*Hanover Ins. Co. v. McLoney*, 205 F.Supp. 49, 53 (E.D.Ky.1962). *See also Kentucky Farm Bureau Mut. Ins. Co. v. Hardin*, Ky., 262 S.W.2d 831, 833 (1953) (insurer estopped from defensively asserting provision against additional insurance when agent was aware of existing policy); *Northwestern Nat. Ins. Co. of Milwaukee v. Avant*, 132 Ky. 106, 116 S.W. 274, 276 (1909) ("If subsequent to the issual of the policy the [insured] by its agent then representing it assented that the insured might take out additional insurance upon the property, the condition against other insurance was waived. Whether there was such assent is a question of fact, to be determined by the jury.").

■ American Growers contends that application of this principle in the context of crop insurance is precluded by the "*Merrill* doctrine." In *Federal Crop Insurance Corporation v. Merrill, supra*, the FCIC had issued insurance on a spring wheat crop that had been reseeded on winter wheat acreage in violation of federal wheat crop insurance regulations. *Id.* at 382, 68 S.Ct. at 2. Relying on the doctrine of estoppel, the plaintiff in *Merrill* claimed that the FCIC should be required to honor his claim because the FCIC's agent had advised him prior to writing the policy that the entire crop was insurable.

---

**2.** Bohannon told Stull that he would confirm this position with another American Growers' employee. The record is unclear whether he ever did so. Upon learning (when Dailey filed his hail damage claim) that Stull had placed Dailey's policies with another agency, Town & Ranch terminated Stull's employment as its agent.

*Id.* The United States Supreme Court disagreed, holding that the FCIC was not bound by "the rules of law whereby private insurance companies are rendered liable for the acts of their agents . . . ." *Id.* at 383 n. 1, 68 S.Ct. at 3 n. 1. Noting that "[m]en must turn square corners when they deal with the Government," the Court held that the FCIC's agent could not bind the public treasury in contravention of federal law. *Id.* at 384–85, 68 S.Ct. at 3–4 (*quoting Rock Island, A. & L.R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920)). American Growers claims that because it insures crops and is regulated and reinsured by the FCIC, it enjoys *Merrill* protection.

The *Merrill* doctrine, however, generally does not apply to private insurers. Indeed, *Merrill* explicitly stated:

> [W]e assume that recovery could be had against a *private insurance company.* But the Corporation is not a private insurance company.

*Id.* at 383, 68 S.Ct. at 3 (emphasis added). An important rationale for the *Merrill* doctrine was the principle of separation of powers; the Court found that judge-made principles such as estoppel should not be applied to open the public coffers when Congress has explicitly ordered them closed. *Id.* at 385, 68 S.Ct. at 3–4; *see REW Enters., Inc. v. Premier Bank, N.A.,* 49 F.3d 163, 167 (5th Cir.1995) (citing *Merrill* and noting that separation of powers concerns emerge because "[e]stopping an agency from disavowing an unauthorized act would validate the agency's improper infringement of the authority of a coordinate branch [and] . . . permit government employees to 'legislate' by misinterpreting or ignoring an applicable statute or regulation.") (quotations and internal citations omitted). However, separation of powers is not an issue when estoppel is applied against a private party. *Id.* Likewise,

claims against private insurers represent no direct threat to the public coffers. *Id.* Finally, the precept that "[m]en must turn square corners when they deal with the Government," *Merrill, supra,* at 385, 68 S.Ct. at 3, generally does not apply when they deal with private insurers.

A necessary condition for applying *Merrill* to private insurers is that Congress has explicitly so decreed, as in the context of the National Flood Insurance Act of 1968 ("NFIA"). Given the peculiar regulatory framework of the NFIA, nearly every flood claim results in a drain on the federal treasury. *See Flick v. Liberty Mut. Fire Ins. Co.,* 205 F.3d 386, 393–94 (9th Cir.2000). Under the NFIA, private flood insurers are considered to be "fiscal agents" of the United States. 42 U.S.C. § 4071(a)(1) (declaring that FEMA Director may enlist the participation of private insurers "as fiscal agents of the United States"). Some federal courts of appeals, noting this designation, have held that private insurers acting as "fiscal agents of the United States" enjoy *Merrill* protection in the context of the NFIA. *Flick, supra* at 391–92; *Gowland v. Aetna,* 143 F.3d 951, 954–55 (5th Cir.1998).

In contrast, the Federal Crop Insurance Act ("FCIA") does not designate private crop insurers as "fiscal agents of the United States" or otherwise indicate that these insurers should be treated as governmental entities. The Eleventh Circuit Court of Appeals has explicitly distinguished the FCIA from the NFIA, noting that the FCIA does not contain the NFIA's provisions regarding suits against private companies, *Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., Inc.,* 121 F.3d 630, 634–35 (11th Cir.1997), and concluding that the FCIA intended to leave insureds with their traditional state law remedies against private crop insurance companies. *Id.* at 635.

The mere fact that the FCIC provides reinsurance coverage to private crop insurance companies and heavily regulates those companies does not entitle them to *Merrill* protection. At least two federal courts of appeals have rejected that argument when made by the Foreign Credit Insurance Association. *Nu–Air Mfg., Co. v. Frank B. Hall & Co. of New York*, 822 F.2d 987, 994 (11th Cir.1987); *Lovell Mfg., v. Export–Import Bank of the United States*, 777 F.2d 894, 901 (3d Cir.1985). The Foreign Credit Insurance Association ("the Association") is a collection of private insurance companies formed at the behest of the United States Export–Import Bank ("Eximbank") to provide insurance for foreign commercial ventures. *Lovell Mfg., supra*, at 895. Like private insurance companies issuing crop insurance pursuant to the FCIA, the Association was heavily regulated and reinsured by Eximbank and argued that it was therefore entitled to *Merrill* protection. Both appellate courts disagreed. Concluding that the Association had read *Merrill* too broadly, the Eleventh Circuit held that *Merrill* did not "bear[ ] any application to private contractual arrangements between private litigants." *Nu–Air Mfg., supra*, at 994. The Third Circuit, while acknowledging that Eximbank owed a duty of reinsurance to the Association, held that its claim did not directly implicate the public treasury. It was the "[Association's] potential claim against the government under the reinsurance agreements, and not [the insured's claim against the Association], which is directed toward the public fisc." *Lovell Mfg., supra*, at 901.

Thus, Dailey's estoppel claim is not barred by *Merrill* and appears (at least on the present record) to be a viable claim. Stull was American Growers' agent and prepared both the 1995 and 1996 policy applications. Once he made his wishes clear to Stull, Dailey's participation in the application process appears to have been limited to simply adding his signature. Stull testified during his deposition that he, not Dailey, decided to apply for MP–325886 in the "dba" name, "Dayland Farms," and that he decided to use Dailey's EIN number instead of his social security number. Stull knew that Dailey intended to cancel coverage for FSN 1354 and FSN 2654 on MP–284734, the fifty-five percent policy, and to institute coverage for those farms on MP–325886, the seventy-five percent policy, because the increased coverage level was instigated by Stull, himself. Dailey testified that he relied entirely on Stull to properly accomplish the coverage changes and Stull's deposition testimony makes it clear that he was aware of Dailey's reliance.

## II. DOUBLE COVERAGE.

■ A second disputed issue of material fact is whether MP–284734 was still in effect with respect to FSN 1354 and FSN 2654 after MP–325886 was issued. Each policy provides:

> We will not permit another Multiple Peril Crop Insurance Policy or Federal Crop Insurance Corporation Policy on your share of the insured crop(s).

> If another policy or Federal Crop Insurance Corporation Policy has been issued, the policy with the earliest date of application will be the one in force, and all other policies will be void.

American Growers contends that both crops were insured under both policies and, thus, it was required by this provision to pay Dailey's claims under MP–284734, the policy "with the earliest date of application," and that MP–325886 was consequently void.[3]

---

**3.** American Growers also asserts that it did    not charge Dailey a premium for the seventy-

This assertion depends, of course, on two assumptions: (1) that both FSN 1354 and FSN 2654 were insured under MP–284734; and (2) that coverage under MP–284734 was not canceled with respect to FSN 1354 and FSN 2654. Those assumptions, however, are not supported by undisputed facts of record. First, the record is unclear as to whether FSN 1354 was ever insured under MP–284734. The only support for American Growers' position is that Stull answered "yes" when he was asked in his deposition whether MP–284734 covered FSN 1354 "to his knowledge." However, in his October 1, 1998, deposition, Dailey testified that 1996 was the first year that he farmed FSN 1354. If so, FSN 1354 could not have been insured under MP–284734. In fact, this seems likely because neither the MP–284734 application nor any document in the record indicates that FSN 1354 was ever covered under MP–284734. Of course, if FSN 1354 was never insured under MP–284734, there was no reason whatsoever for American Growers to adjust Dailey's claim with respect to that farm under the coverage of that policy.

Second, there exists a dispute as to whether MP–284734 still provided coverage for FSN 2654 (and FSN 1354 if it, indeed, was insured in 1995) after MP–325886 was issued in 1996. The pertinent policy provision reads:

LIFE OF POLICY

a. Policy Period.

This is a continuous policy and will remain in effect for each crop year following the signing of the original application or until canceled by either you or us in accordance with the cancellation provision contained herein.

b. Cancellation.

Prior to the cancellation date shown in the State Endorsement, this policy may be canceled for any crop year by either you or us providing written notice to the other. In the absence of such written notice to cancel, the policy will remain in force for each succeeding crop year.

According to this provision, "written notice" suffices to cancel coverage. No provision of the policy suggests that a farmer may not cancel a policy's coverage with respect to one farm but retain its coverage with respect to another farm. After all, a farmer might choose to sell one farm and retain ownership of another. Thus, if Dailey provided "written notice" to American Growers of cancellation of coverage for FSN 2654 under MP–284734, that policy would no longer have been in effect with respect to FSN 2654 during crop year 1996.

The policy does not define "written notice" or explain what sort of written notice is required. Given this lack of specificity, the question of whether American Growers received "written notice" of the cancellation of coverage for FSN 2654 on MP–284734 is, at best, a disputed issue of fact. Stull testified that he "zeroed out" coverage for FSN 2654 on the MP–284734 renewal application in 1996 and included FSN 2654 on the MP–325886 application. Both documents were "written" and received by American Growers. Did they together constitute "written notice"? In the absence of a definition, this question is for the fact-finder.

## III. INSURABLE INTEREST.

■ Finally, there is no basis for American Growers' claim that the 1996 policy was void because Dailey applied for

---

five percent coverage provided by MP–325886. What this apparently means is that, upon determining that MP–325886 did not provide coverage for Dailey's loss, it caused

only the premium for MP–284734 to be deducted from the sum ultimately paid to Dailey for what remained of his tobacco crop.

it in his "dba" name. As noted, the MP–325886 application listed "Dayland Farms" as the applicant and policyholder, and was signed, "Dayland Farms by Peter R. Dailey." Stull thought these steps were required in order to distinguish the two policies. American Growers asserts that these steps rendered MP–325886 void. It claims that because "Dayland Farms," a mere "dba" name, had "no insurable interest" in either FSN 1354 or FSN 2654, MP–325886 was void *ab initio*. Put differently, American Growers contends that a policy is void unless the application is made and the policy issued in the insured's "real name."

However, a review of the policy and the applicable federal guidelines reveals no support for that contention. No cited regulation or policy provision provides that an individual may not apply for insurance under a "dba" name. Indeed, Dailey points out that the "Catastrophic Risk Protection Handbook," published by the United States Department of Agriculture and approved by the Federal Crop Insurance Corporation, contains a chart with examples of how different entities may apply for crop insurance and lists "Northham Land Company c/o James T. Anderson" as a sample form name under which an *individual* can apply for and obtain crop insurance, and "Northham Land Company By James T. Anderson" as an example of how to sign such a policy application. (The chart also notes that the applicant's identification number can be "EIN *or* SSN of The Owner" (emphasis added), facially contradicting American Growers' assertion that the application must contain the applicant's social security number.)[4]

Dailey's signature, "Dayland Farms By Peter R. Dailey," clearly indicates his intent to acquire insurance as an individual in this format. Although the MP–325886 application does not perfectly conform to the example (Stull did not list Dailey's name as a "c/o"), Dailey's identity and intention to file as an individual doing business as "Dayland Farms" are obvious at a glance. If American Growers did not wish to insure Dailey's farms in the "dba" format, it should have rejected the application. There is no dispute that Dailey had an "insurable interest" in both FSN 1354 and FSN 2654. If these tracts were not insured under MP–284734 in 1996, then they were insurable by Dailey—including Dailey doing business as "Dayland Farms"—under MP–325886.

For these reasons and those expressed in the majority opinion, I agree that the decision of the Court of Appeals should be reversed and that this case should be remanded to the Montgomery Circuit Court for further proceedings.

LAMBERT, C.J.; GRAVES, JOHNSTONE, and KELLER, JJ., join this concurring opinion.

---

4. Nevertheless, in an obscure footnote on a different page, the chart indicates that both the EIN and SSN number should be listed when the individual is applying with a dba name. It is easy to see why Stull was confused.