A05A0335. RAIN & HAIL INSURANCE SERVICES, INC. et al.
v. VICKERY et al.
(618 SE2d 111)

ADAMS, Judge.

Rain & Hail Insurance Services, Inc. and Billy Moore appeal from the trial court's denial of their motion for summary judgment in an action filed by Jeff Vickery and Vickery Farms, Inc. The complaint sought damages arising out of Rain & Hail's failure to pay Vickery Farms' claim for prevented planting losses under its crop insurance policy. For the reasons stated below, we affirm.

In reviewing the trial court's denial of the motion for summary judgment, "[w]e apply a de novo standard of review to an appeal from a grant of summary judgment and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Navajo Constr. v. Brigham*, 271 Ga. App. 128 (608 SE2d 732) (2004). Viewed in that light, the record shows that in February 2005, Jeff Vickery, individually and doing business as Vickery Farms, Inc.,[1] applied for two multiple peril crop insurance policies for the 2000 crop season through the Newton Insurance Agency.[2] Vickery Farms' application was accepted by E. L. Ross, Inc. and a "Multiple Peril Crop Insurance Common Crop Insurance Policy" was issued for the company's 2000 crops located on its farms in Bulloch, Screven and Jenkins Counties. A crop insurance policy was also issued for Jeff Vickery, individually,

---

[1] Vickery Farms is solely owned and operated by Vickery.
[2] Newton Insurance Agency was also named as a defendant in the action, but is not a party to this appeal.

covering acreage separate from that of Vickery Farms. After these policies were issued, Rain & Hail purchased the assets of E. L. Ross, Inc.

That summer, Vickery Farms prepared one of its farms, Farm # 5621 in Bulloch County, for planting cotton, but determined that, due to drought conditions, the soil was too dry for planting. Vickery Farms subsequently made a claim under its policy with Rain & Hail for prevented planting losses on Farm # 5621. In response, Billy Moore, a Rain & Hail employee, came to the farm to investigate the claim. Vickery states in his affidavit that Moore told him at the time that Vickery Farms had a valid claim. But four to five months later, Moore informed him that there was a problem with his claim related to the incorporation of his farming operation. After that conversation, Vickery wrote to his congressman to ask for his help in dealing with Rain & Hail. In that letter, he stated that Moore told him that they "had a mess on our hands." Moore explained that "since I had one farm in the name of Jeff Vickery, and the other in the name of Vickery Farms Incorporated, there were no eligible acres for preventing planting on Vickery Farms Incorporated." On December 21, 2000, Rain & Hail sent Vickery a letter addressing various claims submitted for the 2000 crop season. That letter stated, "No claim was paid on the prevented planting acreage reported due to these acres not meeting the insurability requirements outlined in the policy."

Vickery filed his complaint in this matter on July 24, 2002. Rain & Hail and Moore subsequently moved for summary judgment, and after denying that motion, the trial court certified the matter for immediate review.

1. Rain & Hail[3] contends that the trial court erred in denying the motion because Vickery's claims are barred by the applicable statute of limitation. In making this argument Rain & Hail relies upon a provision of the Vickery Farms crop insurance policy, rather than a statutory limitation period. The pertinent provision provides that any legal action arising out of the policy must be brought "within 12 months of the date of denial of the claim." This Court has previously found this contractual limitation provision to be enforceable. *Dailey v. Cotton States Mut. Ins. Co.*, 207 Ga. App. 139 (427 SE2d 109) (1993). However, courts will strictly construe such provisions against the insurer where the application of the contractual limitation results in a forfeiture of the policy benefit. *East Tennessee Mtg. Co. v. U. S. Fidelity &c. Co.*, 268 Ga. 536, 539 (491 SE2d 333) (1997).

---

[3] To simplify our discussion of these issues, we will refer to Rain & Hail and Moore collectively as "Rain & Hail."

Rain & Hail argues that Vickery received both oral and written notification of the denial of the prevented planting claim in December 2000, but did not file the complaint in this action until July 2002, over 18 months later. Rain & Hail thus asserts that the complaint is barred under the terms of the policy.

Vickery contends, however, that he never received notice that his claim had been denied. Vickery states in his affidavit that he was not told that his claim had been denied in his December 13 conversation with Moore. And although Rain & Hail points to Vickery's December 13 letter to show that he received oral notice of the denial, Vickery argues that while the letter reflects a discussion of a problem, it also reflects an ongoing dialogue with Rain & Hail on the issue. And he asserts that Rain & Hail's December 21 letter is ambiguous and cannot be interpreted as formal notice of the denial of his claim. Vickery notes that the letter is addressed to him personally although the claim at issue was made by Vickery Farms. The letter, in fact, makes no mention of Vickery Farms or Farm # 5621, although it specifically references two other farms (# 4437 and # 5430).

In addition, a number of other ambiguities exist in Rain & Hail's letter. For example, the reference line reads:

2000 Multiple Peril Crop Insurance Policy MP-041568
Claim No. 00-674
Peanuts — Bulloch County, GA
Payment of Peanut Claim and Denial of Peanut Prevented Planting

But the policy application completed by Vickery Farms references a different policy number (MP-41561), and the evidence shows that Vickery Farms intended to plant cotton, not peanuts, on Farm # 5621. In sum, the December 21 letter makes no mention of the proper policyholder, the applicable insurance policy, the specific farm or the crop at issue.

Rain & Hail counters that despite these discrepancies, Vickery is the sole shareholder of Vickery Farms and thus notice was properly sent to him. Rain & Hail also asserts that the letter is unambiguous because the only prevented loss claim made by either Vickery or Vickery Farms was on Farm # 5621. But even if the reference to the prevented planting claim could only apply to Farm # 5621, Vickery argues that the letter does not specifically state that the company was denying the claim, but only that it was not paid along with the other claims.

We agree with the trial court that Rain & Hail has failed to establish the "date of denial" of Vickery Farms' prevented planting claim as a matter of law. As discussed more fully below, Rain & Hail

denied the claim based upon the distinction between Vickery and Vickery Farms and the properties owned by each. Yet Rain & Hail attempts to blur this distinction for its own benefit by relying upon notice sent to Vickery in his individual capacity without any reference to Vickery Farms, its insurance policy, Farm # 5621 or cotton. We find, therefore, that a jury issue exists as to whether the December 21 letter constituted written notice to Vickery Farms of the denial of its claim. Similarly, we find that a question of fact exists as to whether Vickery's December 13 letter demonstrates that he received oral notification of the denial.

Accordingly, the trial court properly denied the motion for summary judgment on this ground. "Contractual stipulations in an insurance policy which require that suit be brought within a certain period of time are not necessarily in every instance to be literally complied with" where the circumstances are such as to excuse a delay in compliance. (Citations and punctuation omitted.) *East Tennessee Mtg. Co. v. U. S. Fidelity &c. Co.*, 268 Ga. at 539.

2. Rain & Hail further argues that the trial court erred in denying the motion for summary judgment because the record demonstrates that Rain & Hail properly denied the prevented planting claim under the terms of the policy.

Vickery Farms' crop insurance policy provides a table for determining whether acreage is eligible for prevented planting coverage, depending upon whether a policyholder has a history of planting in the county or whether the policyholder is a new producer. For existing planters, coverage is available for the "maximum number of acres certified for [Actual Production History] purposes . . . in any one of the 4 most recent crop years." Thus, to receive coverage under this provision, a policyholder must document its prior production history in the county in one of the past four years.

Vickery Farms' insurance application, however, provided that it was a "new producer." Although Vickery, individually, had a prior planting history in Bulloch County, Vickery Farms did not. Prevented planting coverage may be obtained by new producers, i.e., those who have not planted crops in the county within the past four years. For these policyholders, the table specifies that prevented planting coverage is available "for the number of acres specified on your intended acreage report which is submitted to us by the sales closing date for all crops you insure for the crop year and that is accepted by us."

It is undisputed that Vickery Farms did not submit an "intended acreage report" in conjunction with its application for prevented planting coverage and Rain & Hail indicates that it denied Vickery Farms' claim on this basis, arguing that the company failed to comply with the specific policy requirements. But Vickery Farms contends that the Newton Insurance Agency advised Vickery that his personal

production history could be used to provide the underlying documentation for Vickery Farms' application. He understood, therefore, that Vickery Farms did not have to provide an intended acreage report or any additional documentation, even though it was listed as a "new producer" on the application. Based upon this evidence, the trial court denied summary judgment because it found that an issue of fact existed as to whether Vickery Farms could have properly relied upon the assurances of the agent who sold it the policy.

Rain & Hail contends that this was error because no agent is authorized to waive the provisions of the crop insurance policy, which are mandated by federal law. Vickery Farms' policy states that it is reinsured by the Federal Crop Insurance Corporation (FCIC) under the Federal Crop Insurance Act (FCIA), 7 USC § 1501 et seq. See *Nobles v. Rural Community Ins. Svcs.*, 122 FSupp.2d 1290, 1294 (M.D. Ala. 2000) (for a brief legislative history of the FCIA). The provisions of the policy are published in the Federal Register and are codified at 7 CFR § 457.8. See id. Farmers may purchase crop insurance under the FCIA either directly from the FCIC or through a private company reinsured by the FCIC. 7 USC § 1508 (a) (1); *Dailey v. American Growers Ins.*, 103 SW3d 60, 64 (Ky. 2003) (Cooper, J., concurring).

In arguing that Vickery Farms could not rely upon the agent's representations, Rain & Hail relies upon the United States Supreme Court's decision in *Fed. Crop Ins. Corp. v. Merrill*, 332 U. S. 380, 384-385 (68 SC 1, 92 LE 10) (1947). The Supreme Court held in that case that an insured must comply strictly with all terms and conditions of the federal crop insurance policy in order to recover under that policy. This is true even where, as here, the insured claims that he did not receive a copy of the policy. The court noted that an insured will be charged with knowledge of the policy provisions, which are published in the Federal Register, "regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance." Id. at 384-385. Moreover, the policy itself states that the provisions of the policy may not be waived by any crop insurance agent.

Vickery argues, however, that the provisions of the policy are ambiguous in this case as he is the sole owner and shareholder of Vickery Farms and he had a history of planting in the county and presented the proper paperwork to substantiate this history. He asserts that this ambiguity was further heightened by the agent's representation that his personal paperwork would suffice in spite of Vickery Farms' "technically" being classified as a "new producer."

Rain & Hail asserts, however, that Vickery Farms cannot establish reasonable reliance because under *Merrill*, Vickery Farms was not entitled to rely upon the agent's representations concerning the

policy requirements. The Supreme Court determined in *Merrill* that the insured could not rely upon his agent's representations of the policy provisions because the FCIC, a government agency, could not be bound or estopped by the erroneous representations of its agent. The court stated:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. . . . And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

Id. at 384.

But one important factual distinction exists between *Merrill* and the case before us. *Merrill* involved a farmer who purchased crop insurance directly from the FCIC, while this case involves the purchase of insurance from a private insurer who is reinsured by FCIC. Thus, *Merrill* was addressing the power of an agent to directly bind the United States government. The Supreme Court was applying the principle "that judge-made principles such as estoppel should not be applied to open the public coffers when Congress has explicitly ordered them closed." (Citations omitted.) *Dailey v. American Growers Ins.*, 103 SW3d at 69. This holding is based in part upon the principles of separation of powers, sovereign immunity and public policy, which do not arise in the context of a private insurance contract. Id.; *REW Enterprises v. Premier Bank*, 49 F3d 163, 167 (5th Cir. 1995); *Lovell Mfg. v. Export-Import Bank of the United States*, 777 F2d 894, 898-899 (3rd Cir. 1985).

We must determine, therefore, whether *Merrill*'s holding that an agent has no authority to bind the FCIC applies equally to a private insurer whose policy is reinsured by the FCIC.[4] At least one opinion has held it does not, reasoning that "claims against private insurers represent no direct threat to the public coffers." *Dailey v. American Growers Ins.*, 103 SW3d at 69 (Cooper, J., concurring). In that case, a majority of the Kentucky Supreme Court[5] noted that the United

---

[4] We note that the Eleventh Circuit has held that the FCIA does not preempt state law breach of contract claims against a private insurer such as Rain & Hail. *Williams Farms of Homestead v. Rain & Hail Ins. Svcs.*, 121 F3d 630, 635 (11th Cir. 1997).

[5] Five justices of the seven-member Kentucky Supreme Court joined in the concurring opinion in *American Growers* addressing the application of the *Merrill* opinion to private insurers. Under Ky. St. S. Ct. Rule 1.020, final dispositions of appeals are decided by a concurrence of at least four justices.

States Supreme Court itself assumed in *Merrill* "that recovery could be had against a private insurance company" based upon the misrepresentations of an agent, but noted that the FCIC was not a private insurance company. Id., citing *Merrill*, 332 U. S. at 383.

The *American Growers* opinion drew an analogy to cases involving the Foreign Credit Insurance Association ("FCIA"), an organization of private insurance companies formed "at the encouragement" of the United States Export-Import Bank ("Eximbank") to provide insurance for foreign commercial ventures. *Lovell Mfg. v. Export-Import Bank of the United States*, 777 F2d at 895. See also *Dailey v. American Growers Ins.*, 103 SW3d at 70. The opinion noted that "[l]ike private insurance companies issuing crop insurance pursuant to the FCIA, the Association was heavily regulated and reinsured by Eximbank. . . ." Id. And at least two federal circuit courts of appeals, the Eleventh and the Third, have held that the *Merrill* rule does not apply to the similarly-situated FCIA.

In reaching that conclusion, the Eleventh Circuit found "nothing in the Supreme Court's reasoning that bears any application to private contractual arrangements between private litigants." *Nu-Air Mfg. Co. v. Frank B. Hall & Co. of New York*, 822 F2d 987, 994 (11th Cir. 1987). The Eleventh Circuit also distinguished *Merrill* on the ground that the FCIA remained the sole insurer under the insured's policy. The court noted that while a separate agreement allowed the FCIA, in turn, to recover from Eximbank, the insured was not a party to that agreement. Similarly, the Third Circuit concluded that in the context of the FCIA, the insured's claim did not directly imperil the public treasury, noting that "it is FCIA's potential claim against the government under the reinsurance agreements, and not [the insured's claim against FCIA], which is directed toward the public fisc." *Lovell Mfg. v. Export-Import Bank of the United States*, 777 F2d at 901.

Here, Vickery Farms' policy indicated that E. L. Ross, Inc., as the insurance company listed on the application, was providing the crop insurance coverage in this case, which, in turn, was reinsured by the FCIC. Rain & Hail later purchased the assets of E. L. Ross, Inc. Although the Standard Reinsurance Agreement (SRA) these private insurers signed with the FCIC is not in the record,[6] we can assume that Vickery Farms was not a party to that agreement. See 7 CFR § 400.161 (n). Further, it appears that the SRA may only provide partial reinsurance for lost crop claims. One court, in describing the relationship between the FCIC and Rain & Hail, stated that, in

---

[6] A search of the Code of Federal Regulations also failed to uncover a copy of the SRA.

addition to paying Rain & Hail for servicing crop insurance policies, the FCIC "also pays a *portion* of each farmer's loss." (Emphasis supplied.) *Holliday v. Rain & Hail*, 690 NW2d 59, 61 (Iowa 2004). And certainly, the case law demonstrates that after Rain & Hail pays a crop insurance claim, the FCIC retains some authority under the SRA to refuse reimbursement. See, e.g., *Rain & Hail Ins. Svc. v. Fed. Crop Ins. Corp.*, 229 FSupp.2d 710 (S.D. Tex. 2002). Accordingly, we find that Vickery Farms' complaint does not represent a direct claim on the public treasury and therefore *Merrill* does not bar the application of equitable estoppel against Rain & Hail in this case.

While Georgia also follows the general rule "requiring an insured to read and examine an insurance policy to determine whether the coverage desired has been furnished," as the trial court recognized, there are two exceptions to this rule: (1) "when the agent holds himself out as an expert and the insured reasonably relies on the agent's expertise to identify and procure the correct amount or type of insurance" and (2) where the evidence reflects a "special relationship of trust or other unusual circumstances which would have prevented or excused plaintiff . . . to exercise ordinary diligence to ensure that no ambiguity existed between the requested insurance and that which was issued." (Punctuation and footnotes omitted.) *Heard v. Sexton*, 243 Ga. App. 462, 463 (532 SE2d 156) (2000). The trial court apparently found that the facts in this case present a jury issue as to whether Vickery's claim fell within the first of these exceptions, as there is no evidence implicating the second.

Nevertheless, Rain & Hail contends that the trial court should have granted summary judgment because Newton Insurance Agency was not Rain & Hail's agent, and thus it cannot be liable for any misrepresentation by Newton. We conclude, however, that the record before us is insufficient to resolve this issue as a matter of law.[7] While Newton sold the policy to Vickery Farms on behalf of E. L. Ross, Inc., there is no evidence to allow us to determine the nature of the relationship between those two entities. Nor is there any evidence, such as the acquisition agreement between Rain & Hail and E. L. Ross, Inc., that would allow us to address whether Newton's representations could ultimately result in an estoppel against Rain & Hail.

Accordingly, we find that the trial court properly denied summary judgment as a jury issue remains as to whether Vickery Farms could reasonably rely upon Newton's representations.

---

[7] We note that the attorney who presented argument on behalf of Vickery Farms at the hearing on the motion for summary judgment stated that Vickery's original attorney had died sometime after filing the complaint in July 2002 and before the summary judgment motion was filed in May 2003. The record does not reflect that any written or oral discovery was conducted on behalf of Vickery Farms.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED JULY 14, 2005.

*Martin Snow, Michael N. White, Thomas B. Gibson II,* for appellants.

*Jones & Smith, Bobby T. Jones, Samantha F. Jacobs, Troy W. Marsh, Jr.,* for appellees.