**In the Matter of Brian T. ALEXANDER, Debtor.**

**No. 03–31759 RFH.**

United States Bankruptcy Court, M.D. Georgia, Athens Division.

July 21, 2005.

Charles N. Kelley, Jr., Gainesville, GA, for Brian T. Alexander.

Gregson T. Haan, Lisa Ritchey Craig, Atlanta, GA, for Wells Fargo Financial Leasing, Inc.

Walter W. Kelley, Albany, GA, Chapter 12 Trustee.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, JR., Chief Judge.

Wells Fargo Financial Leasing, Inc. ("Wells Fargo")[1] filed on December 3, 2003, a motion for relief from the automat-

---

1. Wells Fargo is the successor in interest to Telmark LLC. The Court will refer to Wells Fargo throughout this memorandum opinion.

ic stay.[2] Brian T. Alexander, Debtor, filed on February 24, 2005, a Motion to Use Cash Collateral. Debtor and Wells Fargo submitted a joint stipulation of facts on May 6, 2005. The Court, having considered the stipulation of facts and the arguments of counsel, now publishes this memorandum opinion.

Debtor is a family farmer engaged in chicken farming. Wells Fargo financed Debtor's farming operation. Wells Fargo holds a first priority security interest in Debtor's four chicken broiler houses, associated equipment, and certain real property located in Franklin County, Georgia.

On August 7, 2003, fire destroyed three of Debtor's chicken houses. The remaining chicken house is inoperable. The fire was caused by arson.[3] The chicken houses were covered by a fire insurance policy issued by Georgia Farm Bureau Mutual Insurance Company. Wells Fargo was shown as the Mortgagee/Loss Payee on the policy.[4]

Debtor defaulted on his obligations to Wells Fargo. Wells Fargo, through its counsel, sent Debtor a notice dated August 28, 2003, stating that Wells Fargo was beginning foreclosure proceedings. The foreclosure was scheduled for October 7, 2003. Debtor filed a petition under Chapter 13 of the Bankruptcy Code on October 6, 2003. The bankruptcy filing stayed the foreclosure. Debtor's Chapter 13 case was converted to a Chapter 12 case on February 27, 2004. Wells Fargo does not dispute that Debtor is eligible for relief under Chapter 12.

Debtor made a claim under the fire insurance policy with Georgia Farm Bureau. In July 2004, Georgia Farm Bureau requested certain information to help it investigate the loss and to help determine the identity of the person responsible for setting the fire. Georgia Farm Bureau was not obligated to pay Debtor's claim if the fire was intentionally set by Debtor. Georgia Farm Bureau could deny Debtor's claim if Debtor failed to provide information or to cooperate with an investigation. Debtor did not provide the requested information.

In February 2005, Georgia Farm Bureau formally denied Debtor's claim based upon his breach of the policy provisions requiring Debtor to provide information and to cooperate.[5] Georgia Farm Bureau reached no conclusion regarding the identity of the person responsible for intentionally setting the fire.

The fire insurance policy provided in part that denial of an insured's (Debtor's) claim would not apply to a valid claim of the mortgagee.[6] Wells Fargo made a claim as the mortgagee under the policy.

Georgia Farm Bureau, by letter dated February 14, 2005, acknowledged and agreed to pay Wells Fargo's claim even though Debtor's claim was denied.[7] Georgia Farm Bureau has agreed to pay Wells Fargo $423,250 as mortgagee under the policy. Wells Fargo will hold in trust the funds pending further order of this Court.

Debtor has not made any payments on his obligations to Wells Fargo since filing

---

**2.** Wells Fargo's motion for relief was continued by agreement of Counsel while the fire insurance claim was pending.

**3.** At a hearing on February 25, 2005, Counsel for Wells Fargo and Debtor stated that there was no dispute that the fire was caused by arson.

**4.** Exhibit B, Declarations Page 11.

**5.** Exhibits C and D.

**6.** Exhibit B, Section 6 Mortgage Clause, Policy Page 6 of 7.

**7.** Exhibit D.

for bankruptcy relief. The current post-petition arrearage and payments due Wells Fargo total $73,020. Wells Fargo filed a proof of claim for $1,415,499.99. On December 19, 2004, Wells Fargo's appraiser determined that, in his opinion, the value of the collateral "as is" was $275,000.

Debtor concedes that Wells Fargo is undersecured. Debtor also concedes that "without the insurance proceeds [Debtor's Chapter 12] case is simply not feasible."[8]

Debtor contends that the insurance proceeds held by Wells Fargo are cash collateral. 11 U.S.C.A. § 363(a) (West 2004). Debtor wants to use the insurance proceeds to rebuild his chicken houses and to replace his equipment. Debtor proposes to grant Wells Fargo replacement liens on the rebuilt chicken houses and on the equipment. 11 U.S.C.A. § 1205(b)(2) (West 2004).

Wells Fargo contends that the insurance proceeds are not cash collateral. Wells Fargo wants relief from the automatic stay to repossess or foreclose on its collateral.

The fire insurance policy provides in part:

6. Mortgage Clause.

The word mortgagee includes trustee and loss payee.

[A] If a mortgagee is named in this policy, any loss payable will be paid to the mortgagee and you [Debtor], as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgagees.

[B] If we deny your [Debtor's] claim, that denial will not apply to a valid claim of the mortgagee, . . . .

. . .

If we pay the mortgagee for any loss and deny payment to you [Debtor]:

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

. . .

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

Exhibit B, Section 6 Mortgage Clause, Policy Page 6 of 7.

"It is well established that money payable as the proceeds of a fire policy taken out before bankruptcy for the debtor's benefit does not arise from property, but from a personal contract between insurer and insured." 5 *Collier on Bankruptcy,* ¶ 541.10 (15th ed. rev.2005).

In *Decatur Federal Savings & Loan Assoc. v. York Insurance Co.*[9] the Georgia Court of Appeals stated in part:

Insurance polices regularly have one of two sorts of mortgagee payment clauses. Where the loss is paid to the loss payee named as its interest may appear this constitutes a simple or open-mortgage clause under which the mortgagee is a mere appointee of the fund whose right of recovery is not greater than that of the mortgagor. Conversely, where the loss payable clause contains language stipulating that, as to the mortgagee, the insurance shall not be invalidated by any act or neglect of the mortgagor or owner of the property, the effect of such language, referred to as the New York standard, or union mortgage clause is to create a separate and

---

8. Brief in Support of Motion to Use Cash Collateral and in Opposition to Motion For Relief From Automatic Stay, p. 4–5, Docket No. 77.

9. 147 Ga.App. 797, 250 S.E.2d 524 (1978).

distinct contract on the mortgagee's interest and give to it an independent status. Thus, under the standard clause, the mortgagee may frequently recover although the insured owner could not.

250 S.E.2d at 526.

### Simple Mortgage Clause

■ Under a "simple mortgage clause," an "open mortgage clause," or a "loss payee clause" the mortgagee is not protected if the insured does something, such as committing fraud, to invalidate the policy. *Black's Law Dictionary* 1034 (8th ed.2004). The clause makes the mortgagee merely an appointee to collect the insurance money due the insured. The mortgagee must claim in the right of the insured, not in the mortgagee's own right. *Insurance Co. of North America v. Gulf Oil Corp.*, 106 Ga. App. 382, 127 S.E.2d 43, 45 (1962). "[T]he policy remains one between the [insurance] company and the owner [the insured], with a right of collection vested in the mortgagee by appointment." *Id.* at 46.

### Standard Mortgage Clause

■ Section 6 [B] of the fire insurance policy is known as a "standard mortgage clause," a "union mortgage clause," or a "New York standard clause." Under this clause the mortgagee is protected even if the insured does something to invalidate the mortgage. *Southern General Insurance Co. v. Key,* 197 Ga.App. 290, 398 S.E.2d 237, 238 (1990) *cert. denied.; Fortson v. Cotton States Mutual Insurance Co.,* 168 Ga.App. 155, 308 S.E.2d 382, 383 (1983) *cert. denied.* This clause creates a separate and distinct contract between the mortgagee and the insurance company. *American Central Insurance Co. v. Lee,* 273 Ga. 880, 548 S.E.2d 338, 340 (2001).

*East Tennessee Mortgage Co. v. United States Fidelity and Guaranty Co.,* 268 Ga. 536, 491 S.E.2d 333, 336 (1997).

■ "The standard mortgage clause in a fire insurance policy creates a separate contract between the insurer and the mortgagee *in which the owner has no interest.*" *Murphy v. Aetna Insurance Co.,* 96 A.D.2d 99, 101, 468 N.Y.S.2d 265, 267 (4th Dept.1983) (emphasis added). *See* 4 *Couch on Insurance* § 65:36(3d) (2004).

■ Turning to the case at bar, Georgia Farm Bureau agreed to pay Wells Fargo's claim even though Debtor's claim was denied. The Court is persuaded that Wells Fargo's claim was paid pursuant to a standard mortgage clause. This clause created a separate and distinct contract between Wells Fargo and Georgia Farm Bureau. Wells Fargo was claiming in its own right as mortgagee under Section 6[B] of the fire insurance policy. The Court is persuaded that Debtor has no interest in the insurance proceeds paid to Wells Fargo. The Court will deny Debtor's Motion to Use Cash Collateral.

■ Debtor concedes that Wells Fargo is undersecured and that Debtor's Chapter 12 case is not feasible without the insurance proceeds. The Court will grant Wells Fargo's motion for relief from the automatic stay. 11 U.S.C.A. § 362(d) (West 2004).

An order in accordance with this memorandum opinion shall be entered this date.